## BROOKE v. EASTMAN, Commissioner.

1.  Const. art. 8, § § 5, 6, relating to the disposal of school lands, provide that the purchaser shall pay one-fourth of the price in cash and there-maining three-fourths in installments, but all such subdivided lands may be sold for cash, provided that upon payment of the interest for one full year in advance the balance of the purchase price may be paid at any time, and that no "sale" shall operate to convey any title to any lands for sixty days after the date thereof, and that no grant shall issue until final payment.   Laws 1890, p. 296, c. 136, provides for sales in pursuance of the constitutional provisions, and for the issuance of "contracts of sale," and declares that whenever the purchaser of any tract shall default in the principal or interest, or shall violate any of the provisions of the contract of sale, such sale may be set aside.   Held, that a purchaser who had made the first payment, and received a contract of sale from the commissioners, had an interest in the lands, which was subject to execution under Rev. Code Civ. Proc. 1903, § 336, subjecting to execution "all goods, chattels, moneys, and other property, both real or personal, or any interest therein, of the judgment debtor."

2.  In a suit by execution purchasers of school lands to compel the state to issue patents to them instead of to the original purchaser, the state, by a stipulation of counsel, agreed that, if the original purchaser had such an interest in the land as could be sold under execution, the execution and all other proceedings herein was regular, and his interest passed to plaintiff under said sheriff's deeds. Held, that the state could not be heard to complain that, in case it was compelled to issue patents to plaintiff, it would be unprotected from any claims by the original purchaser.

(Opinion filed Oct. 7, 1903.)

Appeal from circuit court, Brookings county. Hon. JULIAN BENNETT, Judge.

Proceedings by William M. Brooke against David Eastman, as commissioner of school lands, to compel the issuance of patents to certain school lands to plaintiff. From a judgment for plaintiff, defendant appeals. Affirmed.

*John L. Pyle*, Atty. Gen., and *Alva E. Taylor*, Asst. Atty. Gen., for appellant.

*Philo Hall* and *W. H. Roddle*, for respondent.

HANEY, P. J It appears from the agreed statement of facts upon which this cause was submitted to the circuit court that one Iver L. Opsal was the highest bidder for certain tracts of school land; that he deposited with the county treasurer the first payment on each tract; that he received "contracts of sale" in the form prescribed by the board of school and public lands, agreeably to the provisions of chapter 136, p. 296, Laws 1890 (which have not been amended in any manner affecting the questions presented by this appeal); that neither tract was occupied as a homestead, nor exempt as such from sale on execution; that the land was sold at sheriff's sales under and by virtue of executions duly issued upon personal judgments regularly obtained against Opsal; that no redemp-

tion having been made, sheriff's deeds were regularly issued to the purchasers, who subsequently conveyed to the plaintiff; that Opsal wholly abandoned the land after the execution sales, and has not offered or attempted to perform any of the conditions of his contract with the state since making the first payment; that the plaintiff and his grantors promptly paid to the treasurer of the county wherein the land is situated, each subsequent payment required by the "contract of sale" and all taxes assessed against the land; and that the plaintiff demanded a patent from the state prior to the commencement of this action, which was refused. Any defect of parties defendant is expressly waived, and defendant admits ''that, if Opsal had such an interest in the land as could be levied upon and sold under execution levied upon his right, title and interest in the land, the execution and all other proceedings herein were regular, and his interest and title passed to plaintiff under said sheriff's deeds, and he would now be entitled to patents therefor; but defendant contends that Opsal did not have such an interest in the real estate as could be levied upon and sold, and that, in order to entitle relator to patents, the contracts themselves held by Opsal should have been assigned, and that the proceedings herein shown do not amount to such assignment." The question thus clearly defined has not been heretofore considered by this court. In view of the consequences likely to flow from its determination, a careful examination of the law relating to execution sales and the disposal of school and public lands is demanded. "All goods, chattels, moneys and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law, * * * are liable to execution." Rev. Code Civ. Proc. 1903 § 336.

Upon a sale of real property on execution "the purchaser is substituted to and acquires all the right, title, interest and claim of the judgment debtor thereto." Id. § 373. The sheriff's deed vests in the purchaser, or his assigns, "as good and as perfect title in the premises therein mentioned and described as was vested in the debtor at or after the time when such real property became liable to the satisfaction of the judgment." Id. § 384. If, therefore, Opsal had any interest in the land in controversy, such interest was acquired by the plaintiff. Our state Constitution contains the following, among other, provisions relating to the disposal of school and public lands: "No land shall be sold for less than the appraised value, and in no case for less than ten dollars an acre. The purchaser shall pay one-fourth of the price in cash, and the remaining three-fourths as follows; One-fourth in five years, one-fourth in ten years and one-fourth in fifteen years; with interest thereon at the rate of not less than six per cent, per annum, payable annually in advance, but all such subdivided lands may be sold for cash, provided that upon payment of the interest for one full year in advance, the balance of the purchase price may be paid at any time. All sales shall be at public auction to the highest bider, after sixty days' advertisment of the same in a newpaper of general, circulation in the vicinity of the lands to be sold, and one at the seat of government. * * * All sales shall be conducted through the office of the commissioner of school and public lands as may be prescribed by law, and returns of all appraisals and sales shall be made to said office. No sale shall opperate to convey any right or title to any lands for sixty days after the date thereof, nor until the same shall have received the approval of the Governer in such

form as may be provided by law. No grant or patent for any such lands shall issue until final payment be made." Const. art. 8, §§ 5, 6. Substantially if not identically, the same language was employed by the Legislature in establishing and providing regulations for the department of school and public lands. Laws 1890, p. 296, c. 136. All sales are required to be at public auction to the highest bider, and conducted through the office of the commissioner of school and public lands. Whenever a bid is accepted, the purchaser must at once deposit with the county treasurer the amount of the first payment of the price named, together with the amount of the interest for the fiscal year on the deferred payment, or, if the sale be for cash, he must deposit the full amount of the price named, and in either case take the treasurer's receipt for the money deposited, a copy of which receipt shall be retained by the treasurer. The purchaser shall exhibit such receipt to the county auditor, who shall thereupon make a complete report of the case to the commissioner, who shall, if the land is to be paid for in installments, cause to be prepared a "contract of sale" in duplicate according to the form prescribed by the board of school and public lands, and submit the same to the Governor for his approval. If approved, one copy of such contract shall be filed in the commissioner's office and another forwarded to the county auditor to be delivered to the purchaser after the expiration of 60 days from the date of sale. Rev. Pol. Code 1903, §§ 375-377. The only statutory provisions of which we are aware, having direct reference to the effect of a purchaser's failure to perform his obligations under one of these contracts and to the remedy of the state in such a case, are as follows: "The de-

ferred payments for lands sold, and the interest thereon, shall
be promptly paid when due, to the county treasurer. When-
ever the purchaser of any tract shall fail to pay the principal
or interest due by him to the state for such tract, or shall vio-
late any of the provisions of the contract of sale, such sale
may be set aside by the circuit court of the county in which
the tract is situated. Actions shall be prosecuted to enforce
the provisions of this section by the state's attorney of such
county whenever he is directed so to do by the commissioner
of school and public lands.'' Id. §383. The ''contracts of
sale'' delivered to Opsal were all in the same form, signed by
the commissioner and approved by the Governor. The follow-
ing is a copy of one of them: ''At a sale made in the city of
Brookings, in the county of Brookings, state of South Dakota,
on the 7th day of April, A. D. 1891, of school lands in the
county of Brookings, in pursuance of law, Iver L. Opsal of
Brookings, purchased the northwest quarter of the southwest
quarter of section No. 16, in township No. 110, north, of range
No. 50, containing 40 acres and no hundredths, as appears from
the plats and records of said lands now in the office of the com-
missioner of school and public lands, for the sum of four
hundred dollars and no cents, of which amount the said pur-
chaser paid at the time of purchase the sum of one hundred
dollars and no cents on account of the purchase money, and
thirteen dollars and twenty cents, being the interest on the
amount unpaid to the 1st day of January, A. D. 1892. Now if
the said purchaser, his heirs, assigns, or other legal repre-
sentatives, shall pay to the treasurer of the county of Brook-
ings, in said state, at his office, the further sum of three
hundred dollars and no cents, being the amount of the unpaid

purchase money, as follows: viz: One-third thereof in five years, one-third in ten years, and the remainder in fifteen years from the 1st day of January, A. D. 1892, the date of said purchase, with interest at the rate of six per centum per annum, annually in advance, on the first day of January of each year, until the entire amount of said purchase money is paid, and shall also pay to the proper officer all taxes which may be levied upon said land as the same shall become due, then, and in that event only, will the said purchaser, his heirs, assigns, or other legal representatives, be entitled to a patent for the land herein described.    But in case of the nonpayment of the purchase money, or interest, aforesaid, as it may become due, or the violation of any of the provisions of this certificate by the purchaser of said land, or any person claiming under him, then the commissioner of school and public lands may cause proceedings to be instituted in the proper circuit court, as provided in section twenty-six of chapter one hundred thirty-six, of the Laws of 1890, to set aside the sale."    It will be observed that the transaction between the state and Opsal is termed a "sale," in the Constitution and in the statutes; that the formal evidence of the transaction is termed "a contract of sale" throughout the statutes; and that the instrument delivered to the purchaser in this case is substantially in the language of the law.    It simply provides that upon payment of the entire purchase price, with interest and all taxes levied on the land, the purchaser shall receive a patent, and that upon failure to perform either of these conditions an action may be instituted to "set aside the sale."    We are not intending to criticise the form of these instruments.    The difficulty in determining the rights of the parties to this controversy arises from the failure of the Legis-

lature to clearly and accurately express its intention, not from any fault of the state land department. It is doubtful if the officers of the latter would have authority, in preparing these "contracts of sale," to make any substantial departure from the language of the law. They certainly would have no power to include any provision not consistent with the Constitution and legislative enactments. But, however, that may be, in the case at bar no attempt was made to go beyond the language of the law in defining the rights of the parties, and the nature of the transaction may be determined without further reference to the phraseology of the instruments delivered to the purchaser.

Since long before the adoption of the Constitution the meaning of the word "sale" and the distinction between "sales" and "agreements for sales" have been legally defined in this jurisdiction. Rev. Codes 1877, p. 380. It cannot be assumed that such meaning and distinction were unknown to or disregarded by either the constitutional convention or the Legislature. "Sale is a contract by which for pecuniary consideration, called a price, one transfers to another an interest in property." Rev. Civ. Code 1903, § 1299. The word itself implies the transfer of an interest in the subject of the contract. Presuming the word to have been advisedly employed, the conclusion cannot be avoided that the transaction between the state and Opsal was intended to be regarded as a transfer of an interest in the land itself. This conclusion does not conflict with, if it is not impliedly supported by, the language of the Constitution. "No sale shall operate to convey any right or title to any lands for sixty days after the date thereof, nor until the same shall have received the approval of the Governor in such form as may be

provided by law." Const. art. 8, § 6.  These words of limita-
tion were unnecessary unless it was understood that a sale in
itself operates to convey some right and title to the land; and
they may be fairly construed to mean that such is the result
after sixty days have expired and the approval of the Governor
has been obtained.  As to sales of private land by contract, it
is a well-recognized rule that the property is from the time of
the delivery of the executed contract at the risk of the vendee,
who holds the full equitable title, the vendor's legal title merely
remaining in him for security to compel the payment of the
purchase price; the relation between the parties being analog-
ous to that between mortgagor and mortgagee, the vendee
holding an equity which is liable to foreclosure on the suit of
the vendor.  28 Am. & Eng. Enc. of law, 107; Bissell v. Hey-
ward, 96 U. S. 580, 24 L. Ed. 678; Jennison v. Leonard, 21
Wall, 302, 22 L. Ed. 539.  It is equally well settled with respect
to private lands that a vendee with bond for title has an inter-
est which may be reached by execution, and the same is true
where the vendee has entered under a contract of sale, and
paid part of the purchase money and made improvements.  11
Am & Eng. Ency. Law (2d Ed.) 637.  Merely because this
controversy involves public land affords no reason for ignoring
wise and universally recognized principles of the law of real
property.  It is the duty of this court to determine what regu-
lations have been, not what could or should have been, estab-
lished for the disposal of the school and public lands.  In doing
so attention should be given to the language of our own Con-
stitution and the statutes, rather than to the decisions in other
states where the Constitution and statutes are not the same as
here.

It will be readily conceded that one who has received a contract of sale as provided in the statute has the right to exclusive possession of the property, the unrestricted right to cultivate it, the right to make permanent improvements thereon, and it is his duty to pay all taxes levied upon it. These rights and this duty continue until the sale has been set aside by the circuit court. Suppose one has made valuable improvements, and paid all of the installments, what has the state in the land beyond the naked legal title? Nothing. Suppose all payments except the last one have been made, and all taxes for 15 years have been paid, has not the purchaser, at least in equity, a substantial and valuable interest in the premises? He most certainly has. Where only one payment has been made, the interest may be less valuable, but it is the same in nature and quality. The conclusion cannot be avoided that Opsal had an interest in the land in controversy which was subject to sale on execution, and which was, by operation of the execution sales and subsequent conveyances, acquired by the plaintiff. Nothing in the section of the statute heretofore quoted, relating to the setting aside of these sales, militates against this conclusion; on the contrary the purchaser on the installment plan is recognized as having rights which can be terminated only by a judgment or decree of the circuit court. The entire expression of the legislative will on this important subject is brief, and somewhat peculiar. Sales are usually "set aside" for some cause affecting their validity *ab initio*. It is scarcely accurate to speak of "setting aside" a valid sale when the evident purpose of the proceeding is to ascertain the rights and liabilities resulting therefrom. Possibly "rescind" would more nearly ex-

press the legislative intent.    The statute  is silent  as  to what
consequences shall flow from the setting aside  or rescission of
one of these sales.    A case might arise where an absolute  for-
feiture of all payments and improvements would be grossly un-
just.    Whether the Legislature would have  power to  provide
for such a forfeiture is  not  pertinent  to  this  appeal.    It  is
enough to say that it has not attempted to do so, and that un-
der the existing statute a court of equity sitting  for  the  pur-
pose of vacating or rescinding a sale would have inherent pow-
er to properly adjust  the equities  of  the  respective  parties.
Therefore the nature of the state's remedy in  cases  of  failure
to perform on the part of the purchaser is entirely  consistent
with the contention that he has an interest  in the land subject
to sale on execution.

   As  all  the  conditions of  the contract  of sale have been
performed, and it is immaterial to the state  who  secures  the
patent, it has no cause to complain if required  to  convey  the
legal title, provided it is protected from any future  claims  on
the part of the original purchaser, his heirs or assigns     Under
the stipulation of counsel  in  this  case,  the  state  cannot  be
heard to say that it will be so unprotected.    We suggest, how-
ever, that in cases of this character all persons connected with
the contract of sale should be made  parties  to  the  action  or
proceeding for the benefit of the plaintiff's title as  well  as the
protection of the state.

   We  think  the  plaintiff is  entitled  to  a  patent  to  the
land in controversy, and that the judgment of the circuit court
should be affirmed.    It is so ordered.