HERMAN E. SOX, Respondent, v. W. W. MIRACLE, M. W. Miracle, Maggie Miracle, Standard Oil Company, a Corporation, Dodson, Fisher, Brockman Company, a Corporation, North Star Lumber Company, a Corporation, Defendants, M. W. Miracle, Respondent, Dodson, Fisher, Brockman Company, Appellant.

(160 N. W. 716.)

Executory land contract — school lands — purchase of — from state — real property — statutes — levy upon — by creditor — sold as real estate.

An executory land contract for the purchase of school lands from the state of North Dakota, although technically speaking not real property, must, under the provisions of §§ 300 to 335, Compiled Laws 1913, be levied upon and sold by a creditor of the vendee as such.

Opinion filed December 2, 1916. Rehearing denied December 28, 1916.

Action to have an assignment of a school land contract declared a mortgage and for the foreclosure of the same. Claim of a prior attachment.

Appeal from the District Court of La Moure County, *J. A. Coffey*, J.

Judgment for plaintiff. Defendant Dodson, Fisher, Brockman Company appeals.

Reversed.

*Henry G. Middaugh* and *Rollo F. Hunt,* for appellant.

Under an executory contract for the purchase and sale of state school lands, the holder of such contract may maintain an action for injuries done to the lands. Such holder has an interest in the lands. He is vested with an estate in the lands. Assignees of such holder, when the contract is properly assigned, delivered, and recorded, are invested with the same rights therein and thereunder as was the person who obtained the contract from the state. Comp. Laws, 1913, §§ 314, 315; Laws 1893, chap. 118, § 30; Brooke v. Eastman, 17 S. D. 339, 96 N. W. 699; 28 Am. & Eng. Enc. Law, 107; Bissell v. Heyward, 96 U. S. 580, 24 L. ed. 678; Jennison v. Leonard, 21 Wall. 302, 22 L. ed. 539; Martin v. Bryson, 31 Tex. Civ. App. 98, 71 S. W. 615; Allen v. Cadwell, 55 Mich. 8, 20 N. W. 692; Kercheval v. Wood, 3 Mich. 509; How. Anno. Stat. (Mich.) 5729, 7532; Robertson v. Howard, 82 Kan. 588, 109 Pac. 696; Travis v. Topeka Supply Co. 42 Kan. 625, 22 Pac. 991; Poole v. French, 71 Kan. 391, 80 Pac. 997.

Lands held by equitable title are subject to levy and sale as well as that held by legal title. Aldrich v. Boice, 56 Kan. 170, 42 Pac. 695.

Such title, under such a contract, is properly levied upon under execution or attachment, as real property. Rev. Codes 1905, §§ 7137, 9532, Comp. Laws 1913, §§ 7751, 10,368; Nearing v. Coop, 6 N. D. 345, 70 N. W. 1044; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856; Salzer Lumber Co. v. Claflin, 16 N. D. 601, 113 N. W. 1036.

The interest of the vendee in such a contract is the money contracted to be paid by the purchaser, and he retains legal title only as security. The interest of vendee thereunder is the land contracted to be conveyed. Clapp v. Tower, 11 N. D. 556, 93 N. W. 862; Williams v. Haddock, 145 N. Y. 144, 39 N. E. 825; Keep v. Miller, 42 N. J. Eq. 100, 6 Atl. 495; 7 Am. & Eng. Enc. Law, 2d ed. 471, cases cited in note 1; Woodward v. McCollum, 16 N. D. 42, 111 N. W. 623; 29 Am. & Eng. Enc. Law, 2d ed. 703, and cases cited; Nearing v. Coop, 6 N. D. 349, 70 N. W. 1044; Roby v. Bismarck Nat. Bank, 4 N. D. 156, 50 Am. St. Rep. 633, 59 N. W. 719; Moen v. Lillestal, 5 N. D. 331, 65 N. W. 694; Pom. Eq. Jur. 368, and cases cited; Warvelle, Vend. & P. 2d ed. 842; Lombard v. Chicago Sinai Congregation, 64 Ill. 477; Rand v. Garner, 75 Iowa, 311, 39 N. W. 515; Sheppard v. Messenger, 107 Iowa, 717, 77 N. W. 515; Hook v. Northwest Thresher Co. 91 Minn. 482,

98 N. W. 463; Wilder v. Haughey, 21 Minn. 101; Reynolds v. Fleming, 43 Minn. 514, 45 N. W. 1099; Atwater v. Manchester Sav. Bank, 45 Minn. 341, 12 L.R.A. 741, 48 N. W. 187; Marston v. Williams, 45 Minn. 116, 22 Am. St. Rep. 719, 47 N. W. 644; Van Camp v. Peerenboom, 14 Wis. 66; Lippencott v. Wilson, 40 Iowa, 425; Simonson v. Wenzel, 27 N. D. 738, L.R.A. —, —, 147 N. W. 804.

The attachment creditor is protected against unrecorded conveyances. Rev. Codes 1905, § 5038, Comp. Laws 1913, § 5594; Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061; Enderlin Invest. Co. v. Nordhagen, 18 N. D. 523, 123 N. W. 390, 21 N. D. 25, 129 N. W. 1024; 2 R. C. L. 857; National Bank v. Western P. R. Co. 157 Cal. 573, 27 L.R.A.(N.S.) 987, 108 Pac. 676, 21 Ann. Cas. 1391; Westervelt v. Hagge, 61 Neb. 647, 54 L.R.A. 333, 85 N. W. 852.

A judgment obtained in a suit where an attachment has been levied relates back to the date of such levy. Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976; Brooke v. Eastman, 17 S. D. 339, 96 N. W. 699; Simonson v. Wenzel, 27 N. D. 738, L.R.A. —, —, 147 N. W. 804; Balen v. Mercier, 75 Mich. 42, 42 N. W. 666; Miller v. Shelburn, 15 N. D. 182, 107 N. W. 51.

The purchaser under an executory contract for the sale of land or a bond for title, being in possession and having partly performed his part of the contract, although the legal title remains in the vendor, has an interest in the premises which he may mortgage to a third person. 27 Cyc. 1037, 1139, and cases cited; Krause v. Krause, 30 N. D. 54, 151 N. W. 991; Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976.

*Engerud, Holt, & Frame,* for M. W. Miracle, respondent, and *Davis & Warren,* for plaintiff, respondent.

The method of levy under an execution or writ of attachment depends upon the character of the property to be proceeded against, and this distinction is especially marked as between real and personal property. Comp. Laws 1913, §§ 7547, 7720.

Such proceedings were not known to the common law, but are wholly statutory. Birchall v. Griggs, 4 N. D. 305, 50 Am. St. Rep. 654, 60 N. W. 842; Latham v. Blake, 77 Cal. 646, 20 Pac. 417, 18 Pac. 150.

The directions of the statute must be strictly followed. Ireland v.

Adair, 12 N. D. 29, 102 Am. St. Rep. 561, 94 N. W. 766; Birchall v. Griggs, supra; Courtney v. Eighth Ward Bank, 154 N. Y. 688, 49 N. E. 54; Rudolph v. Saunders, 111 Cal. 233, 43 Pac. 619; Latham v. Blake, supra; Hayden v. National Bank, 130 N. Y. 146, 29 N. E. 143; McLaughlin v. Alexander, 2 S. D. 226, 49 N. W. 99.

Appellant acquired no lien by the attachment proceedings, because the words "real property" used in the statute impart a legal estate in fee simple. Comp. Laws 1913, §§ 5249, 5250, 7547, 7691, ¶ 1; 3 Kent, Com. 401 to 403; Murphy v. Superior Ct. 138 Cal. 69, 70 Pac. 1070; Fretwell v. McLemore, 52 Ala. 145; Bates v. Sparrell, 10 Mass. 325; Meni v. Rathbone, 21 Ind. 454; Scogin v. Perry, 32 Tex. 21; Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976; Phœnix Min. & Mill. Co. v. Scott, 20 Wash. 48, 54 Pac. 777; Dickerson v. Nelson, 4 Ind. 160; Jeffries v. Sherburn, 21 Ind. 112; Harrington v. Sharp, 1 G. Greene, 131, 48 Am. Dec. 365.

Further than this, and as another reason, because the interest of the holder of the contract of sale was personal property. Cummings v. Duncan, 22 N. D. 535, 134 N. W. 712, Ann. Cas. 1914B, 976; Miller v. Shelburn, 15 N. D. 182, 107 N. W. 51; Pom. Eq. Jur. § 367; Bogart v. Perry, 1 Johns. Ch. 52; Davis v. Williams, 130 Ala. 530, 54 L.R.A. 749, 89 Am. St. Rep. 55, 30 So. 488; Comp. Laws 1913, § 7903, ¶ 3.

These state school contracts create equitable estates and interests in all respects similar to contracts for the sale of land between private parties. Jeffries v. Sherburn, 21 Ind. 112; Martin v. Bryson, 31 Tex. Civ. App. 98, 71 S. W. 615; Wilder v. Haughey, 21 Minn. 101; Poole v. French, 71 Kan. 391, 80 Pac. 997; Allen v. Caldwell, 55 Mich. 8, 20 N. W. 692; Robertson v. Howard, 82 Kan. 588, 109 Pac. 697; Brooke v. Eastman, 17 S. D. 339, 96 N. W. 699; Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976.

The legislature may classify property or define a given term differently in the different Codes, to give effect to a purpose which it has in mind in dealing with a given subject-matter. Missouri, K. & T. R. Co. v. Miami County, 67 Kan. 434, 73 Pac. 103; Lewis v. Glass, 92 Tenn. 147, 20 S. W. 571; Stull v. Graham, 60 Ark. 461, 31 S. W. 46.

Cases which hold that a vendee's equity under an executory contract of purchase may be levied upon and sold on execution as real estate are under statutes not like our statutes, and here lies the distinction. Kan.

Gen. Stat. 1889, § 6687, ¶ 8; Minn. Rev. Laws 1905, § 5514, ¶ ·9; Miller's Rev. Code (Iowa) 1888, § 45, ¶ 8; How. Anno. Stat. (Mich.) 2d ed. § 2, ¶ 9; Re McCabe, 29 Mont. 28, 73 Pac. 1106.

Only a mere right in equity coupled with possession is created in the vendee by such a contract, and does not constitute a leviable interest. Jeffries v. Sherburn, 21 Ind. 112; Bremseth v. Olson, 16 N. D. 242, 13 L.R.A.(N.S.) 170, 112 N. W. 1056, 14 Ann. Cas. 1155; Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684; McKee v. Wilcox, 11 Mich. 359, 83 Am. Dec. 743; Spencer v. Geissman, 37 Cal. 96, 99 Am. Dec. 248.

Further than what has been said, the levy was void because the property was personal property and was not levied on as such, as by law provided. Comp. Laws 1913, § 7547; Ireland v. Adair, 12 N. D. 29, 102 Am. St. Rep. 561, 94 N. W. 766; Birchall v. Griggs, 4 N. D. 305, 50 Am. St. Rep. 654, 60 N. W. 842; Penoyer v. Kelsey, 150 N. Y. 77, 34 L.R.A. 248, 44 N. E. 788; Van Norman v. Circuit Judge, 45 Mich. 204, 7 N. W. 796; McLaughlin v. Alexander, 2 S. D. 226, 49 N. W. 99; Courtney v. Eighth Ward Bank, 154 N. Y. 688, 49 N. E. 54; Rudolph v. Saunders, 111 Cal. 233, 43 Pac. 619; Gow v. Marshall, 90 Cal. 565, 27 Pac. 422; McBride v. Fallon, 65 Cal. 301, 4 Pac. 17; Latham v. Blake, 77 Cal. 646, 20 Pac. 417, 18 Pac. 150; Perry v. Hayward, 12 Cush. 344; Lederer v. Rosenthal, 99 Wis. 235, 74 N. W. 971; Hayden v. National Bank, 130 N. Y. 146, 29 N. E. 143; Williams v. Baynes, 84 Ga. 116, 10 S. E. 541; Wight v. Barnstable, 123 Mass. 183; Bird v. Burgsteimer, 100 Ga. 486, 28 S. E. 219; Greentree v. Rosenstock, 61 N. Y. 583; Grover v. Fox, 36 Mich. 453; Tullis v. Brawley, 3 Minn. 277, Gil. 191; Swart v. Thomas, 26 Minn. 141, 1 N. W. 830; Re Flandrow, 84 N. Y. 1.

A judgment roll properly filed and the judgment docketed and recorded, such judgment becomes a lien upon the debtor's real estate, except his homestead.

The interest of the judgment debtor here was merely an equitable estate, an estate known to and recognized by courts of equity alone. Comp. Laws 1913, § 7691; Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976; Smith v. Ingles, 2 Or. 43.

Neither at common law nor under our statutes is such an interest affected by the docketing of a judgment. Phœnix Min. & Mill. Co.

v. Scott, 20 Wash. 48, 54 Pac. 777; Disborough v. Outcalt, 1 N. J. Eq. 298; Bogart v. Perry, 1 Johns. Ch. 56; Potter v. Couch, 141 U. S. 296, 35 L. ed. 721, 11 Sup. Ct. Rep. 1005; Bates v. Ledgerwood Mfg. Co. 130 N. Y. 200, 29 N. E. 102; Wilson v. Beard, 19 Ala. 629; Gorham v. Arnold, 22 Mich. 247; Green v. Hill, 101 Ga. 258, 28 S. E. 692.

No lien on the land was created. Comp. Laws 1913, § 5594; Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061; Hunter v. Coe, 12 N. D. 505, 97 N. W. 869; Ildvedsen v. First State Bank, 24 N. D. 227, 139 N. W. 105.

One who deals with land is bound at his peril to know who is in possession, and is chargeable with notice of the occupant's rights. But he may show that upon due and reasonable inquiry made he failed to discover any legal or equitable occupant. Krause v. Krause, 30 N. D. 54, 151 N. W. 991; Betts v. Letcher, 1 S. D. 182, 46 N. W. 193; Thompson v. Pioche, 44 Cal. 516; Scheerer v. Cuddy, 85 Cal. 270, 24 Pac. 713; Pom. Eq. Jur. §§ 614, 615, 618; Beattie v. Crewdson, 124 Cal. 577, 57 Pac. 463.

And the burden is on him to show that he did not have notice of these rights. Beattie v. Crewdson, 124 Cal. 577, 57 Pac. 463; Scheerer v. Cuddy, 85 Cal. 270, 24 Pac. 713; Pell v. McElroy, 36 Cal. 269; Wilhoit v. Lyons, 98 Cal. 409, 33 Pac. 325; Betts v. Letcher, 1 S. D. 193, 46 N. W. 193.

The respondent was, when the execution was levied, and had been for a long time prior, actually working and farming the land in question. He was exercising acts of ownership and dominion over it, customary and usual to obtain the benefits of the use for which the lands were best suited. Nearing v. Coop, 6 N. D. 345, 70 N. W. 1044; Quaschneck v. Blodgett, 32 N. D. 603, 156 N. W. 216; Giddings v. '76 Land & Water Co. 83 Cal. 96, 23 Pac. 196; Hunter v. Coe, 12 N. D. 505, 97 N. W. 869; Grover v. Fox, 36 Mich. 453.

BRUCE, J. This is an action to have an assignment of a school-land contract declared a mortgage and for the foreclosure of the same. The controversy, however, is between the assignor or mortgagor, W. M. Miracle, and his assignee, the plaintiff, Herman E. Sox, and the de-

fendant Dodson, Fisher, Brockman Company, which claims under an alleged prior attachment.

On November 22, 1905, the certain school land in controversy was sold by the state of North Dakota to one James E. Brady under the usual executory contract for the sale of school lands. On April 25, 1909, Brady assigned this contract to the defendant W. W. Miracle, who thereupon went into the possession of the premises and remained in the actual, open, and notorious possession thereof until after the levy of the attachment hereinafter mentioned. On January 8, 1910, this assignment was presented to the county auditor of La Moure county, who indorsed thereon, "Taxes paid and transfer entered this 8th day of January, 1910." On January 21, 1910, this assignment was approved by the Board of University and School Lands.

On December 31, 1909, the defendant W. W. Miracle executed and delivered a promissory note for $1,000, with interest at 12 per cent until paid, to the plaintiff Herman E. Sox, and to secure the same, and on the said date, assigned to the said plaintiff, Herman E. Sox, the certain school section of land. This assignment was in all essentials a mortgage, and provided that W. W. Miracle should pay the taxes, and, in case of his nonpayment of the interest and taxes, the plaintiff might pay the same, and in which event such payments would draw 12 per cent interest. This assignment, however, was not presented to the county auditor for entry until July 9, 1913, nor approved by the Board of University and School Lands until July 14, 1913, nor recorded with the register of deeds until August 22, 1913.

It is this note of $1,898.34 given by M. W. Miracle to Herman E. Sox which is sued upon in the action before us, and the lien created by which is sought to be foreclosed. The right of this foreclosure seems to be unquestioned, as the defendant M. W. Miracle defaulted, not only in the payment of taxes, but in the payment of interest. Prior to the beginning of the action, however, but after the assignment by M. W. Miracle to the plaintiff, Sox, or, the execution of what to all intents and purposes was a mortgage by M. W. Miracle and W. W. Miracle to the said Herman E. Sox, and on the 25th day of April, 1911, the defendant Dodson, Fisher, Brockman Company, sued the defendant W. W. Miracle on an account, and on said day and in support of said suit attempted to levy an attachment upon said land; said action coming to

judgment and an execution being issued on the 15th day of March, 1913, against the said W. W. Miracle and delivered to the sheriff, who made a return thereon of no personal property found, and then, and on the 17th day of March, attempted to levy the same on the school land in question, and on the 17th day of March filed his notice of levy in the office of the register of deeds in and for La Moure county, and later, and on the 25th day of April, 1913, made a purported sale of said land, at which the defendant Dodson, Fisher, Brockman Company was the purchaser, and issued to the said Dodson, Fisher, Brockman Company a sheriff's certificate of sale.

The main question in controversy is the validity of these attachment proceedings and of this sheriff's sale.

The trial court found them to be void, and entered judgment for the foreclosure of the mortgage lien of the plaintiff, Herman E. Sox, and it is from this judgment that the defendant Dodson, Fisher, Brockman Company appeals and asks for a trial *de novo*.

Later and on the 9th day of March, 1910, the defendant W. W. Miracle gave to the plaintiff, Herman E. Sox, another note for $500 also taking security on the school section in question. When the said notes became due, the defendant W. W. Miracle was unable to pay the same, and on the 1st day of April, 1912, he and his wife, Maggie Miracle, entered into an agreement with the defendant M. W. Miracle by which the said M. W. Miracle agreed to assume the payment of said notes, and, in consideration of such assumption the said W. W. Miracle, and on the said 1st day of April, 1912, transferred to said M. W. Miracle all his interest in the school-land contract. On or about the same date and in furtherance of this agreement, the defendant M. W. Miracle executed and delivered to the plaintiff, Herman E. Sox, a promissory note for $1,898.34, being the amount due on the notes of $1,000 and $500 before referred to, and given by W. W. Miracle—said note being payable on the 1st day of November, 1912, and drawing interest at 12 per cent—it being also agreed by the said contract that the land in question should stand and be retained by the plaintiff, Herman E. Sox, as security for the payment of this note as had before been agreed upon by the defendant W. W. Miracle and the plaintiff, Herman E. Sox.

Stated, another way the crucial question is whether the defendant

35 N. D.—30.

Dodson, Fisher, Brockman Company acquired rights by their levy under their attachment against the property in question superior to the claims of Sox and M. W. Miracle. Sox claims under an assignment from W. W. Miracle bearing date December 31, 1909, but not presented to the county auditor for entry until July 9, 1913, and not approved by the Board of University and School Lands until July 14, 1913, and not recorded with the register of deeds until August 22, 1913. M. W. Miracle claims under an assignment from W. W. Miracle and wife, dated April 1, 1912. The attachment was levied on May 25, 1911.

In the attachment proceedings the interest of W. W. Miracle under the school-land contract was levied upon and treated as real property belonging to said W. W. Miracle.

Practically the whole controversy revolves around the conclusion of the trial court that the levy under the attachment was void. It is claimed by the plaintiffs and respondents, and no doubt was held by the trial court, that W. W. Miracle's interest under the contract was not an interest in the land, and hence could not be levied upon in the manner provided by law for a levy on real property. Section 7547 provides how attachments may be levied. Subdivision 1 of the section relates to real property, and subdivision 4 to personal property. Subdivision 1 provides that "levy under a warrant of attachment must be made as follows:

"1. Upon real property, by the sheriff's filing with the register of deeds of the county in which the property is situated, a notice of the attachment subscribed by him, stating the names of the parties to the action, the amount of the plaintiff's claim as stated in the warrant and a description of the property levied upon, which notice must be recorded and indexed by the register of deeds in like manner and in the same book as a notice of the pendency of an action."

Subdivision 2 provides for a somewhat similar method in the case of "personal property which by reason of its bulk or other cause cannot be immediately removed, by the sheriff's filing with the register of deeds a notice of the same kind as described in subdivision 1 of this section, and upon range stock."

Subdivision 3 provides for the levy on personal property which is capable of manual delivery, and subdivision 4 provides for the levy:

"Upon other personal property by leaving a copy of the warrant and

a notice showing the property attached with the person holding the same; or, if it consists of a demand other than as specified in the last subdivision, with the person against whom it exists."

It is conceded by the appellants that the attachment creditor in the case at bar proceeded under subdivision 1 by filing a notice of levy with the register of deeds, and by serving a copy of the warrant and of the notice of levy on the occupant. The respondents contend that this attempted levy was wholly ineffective to create a lien, because the defendant W. W. Miracle, having only an executory contract of purchase, was not the owner of real property within the meaning of those words as used in § 7547, subdiv. 1.

The contention of the defendant and appellant, Dodson, Fisher, Brockman Company, is that the interest was real estate and was properly levied upon as such. It also maintains that even if not technically real estate the statutes which specifically deal with school-land contracts provide that the levy shall be made as if it were.

It calls attention to § 314, Compiled Laws of 1913, which provides: "Contracts of purchase, issued pursuant to the provisions of law, entitle the purchaser, his heirs or assigns, to the possession of the lands therein described, to maintain actions for injuries done to the same, or any action or proceeding to recover possession thereof, unless such contract has become void by forfeiture; and all contracts of purchase in force may be recorded in the same manner that deeds of conveyance are authorized to be recorded."

It calls attention to the fact that this provision gives the purchaser the right to maintain actions for injuries to the property purchased. It asks why should the law have given this right if it did not intend to vest in the holder some estate in the land?

It further calls attention to the fact that § 315 of the Compiled Laws of 1913 is an amendment of § 31 of chapter 118 of the Laws of 1893. That this section, being § 198, Rev. Codes 1899, originally merely provided that "the legal assignees of all bona fide purchasers of any of the lands mentioned in this act are subject to and governed by the provisions of law applicable to the respective purchasers of whom they are assignees; and they shall have the same rights in all respects as original purchasers of the same class of lands."

It says, however, that this section was amended in 1907 so that §

315 of the Compiled Laws of 1913 now reads: "Each assignee of a bona fide purchaser of any of the lands mentioned in this article is subject to and governed by the provisions of law applicable to the purchaser of whom he is assignee, and he shall have the same rights in all respects as an original purchaser of the same class of lands. The interest of a purchaser of any of the lands mentioned in this article that shall have been heretofore or may hereafter be levied upon or attached in any action brought to recover a debt due from said purchaser of said lands and the interest of said purchaser which has heretofore been or may hereafter. be sold under execution and a certificate of sale may have been or shall hereafter be issued by the sheriff of the county to the party buying at said sale the interest of said purchaser of said lands and after the expiration of one year from the date of sale, the buyer of the interest of said purchaser of said lands may present to the land commissioner of this state a certificate of the sheriff of the county in which the land is situated showing said sale and the name and address of the person buying thereat and also showing that one year has elapsed between the date of sale of said land and the date of making said certificate, also showing that no redemption has been made by the purchaser of said land, his assignee or successor in interest or anyone in behalf of either and showing that no claim of homestead has .been made to said land by anyone. On the filing of said certificate in the office of the land commissioner of the state of North Dakota the said land commissioner shall subrogate the person who bought the interest of the purchaser of said lands at said sale, to the contract of purchaser and to all rights of said purchaser of said lands in and to said lands and said person so subrogated shall carry out and perform said contract of purchase with said state in all particulars, and at the expiration of said contract and on the full performance thereof, the person so subrogated shall receive from the state of North Dakota a deed to said land."

Counsel for appellant argues that this amendment must have been passed for some useful purpose, and that useful purpose was to define the rights of purchasers at execution sales. He argues that the statute says that the interest of the contract holder may be "levied upon or attached," and in case the interest be sold under execution and a certificate of sale may have been or shall hereafter be issued by the sheriff of the county to the party buying at said sale the interest of said purchaser

of said lands, and after the expiration of one year from the date of sale, the buyer may present a certificate of the sheriff showing, among other things, "that no redemption has been made by the purchaser of said land, his assignee, or successor in interest, or anyone in behalf of either, and showing that no claim of homestead has been made to said land by anyone, and thereupon the purchaser at the execution sale will be subrogated to the rights of the original purchaser."

If, he argues, the interest levied upon is not a real property interest, why should this amendment have been passed? Why *should there be a year for redemption? Why should there be evidence submitted that no claim of homestead had been made to said land?*

He argues in short that whatever the rule may be as to the interest of a vendee under an ordinary executory contract for the purchase of land, there can be no question as to the interest of a purchaser under a school-land contract, and that the statutes in relation of these school-land contracts make that interest a real-property interest.

The question before us is one of statutory construction. And first what is the meaning of the word *"real property"* as used in subdivision 1 of § 7547?

What is the meaning of the term "other personal property" as used in subd. 4?

Section 5248, Compiled Laws 1913, classifies property as: (1) Real or immovable; (2) personal or movable.

Section 5249 defines real or immovable property, and says that it consists of: (1) Land; (2) that which is affixed to land; (3) that which is incidental or appurtenant to land; (4) that which is immovable by law.

Section 5250 defines land as "the solid material of the earth, whatever may be the ingredient of which it is composed, whether soil, rock, or other substance."

Section 5251 defines the term "affixed" as follows: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

Section 5252 defines the term "incidental or appurtenant" as follows:

"A thing is deemed to be incidental or appurtenant to land, when i. is by right used with the land for its benefit: as in the case of a way, or water course, . . . or heat from or across the land of another. Sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills and all other machinery or tools used in working or developing a mine are to be deemed affixed to the mine."

Section 5253 . defines the term "personal property" as follows: "Every kind of property that is not real is personal."

It will be noticed that these definitions divide property into the two arbitrary classes of "real" and "personal," and that in North Dakota what is generally called "mixed property" is unknown.

Again in the Code and in the Chapter on "Definitions and General Provisions" we find the following:

Section 7279. "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except when a contrary intention plainly appears."

Section 7309. "The following words also have the signification attached to them in this section unless otherwise apparent from the context: (1) The word 'property' includes property, real and personal; (2) the words 'real property' are coextensive with lands, tenements and hereditaments; (3) the words 'personal property' include money, goods, chattels, things in action and evidences of debt."

What, then, is the meaning of the terms, "tenements and hereditaments?" This is all we need to inquire about, as § 5250 has already defined "land" to be "the solid material of the earth." For this meaning we have to go to the definition of the common law, and there can be no question that at the common law the property levied upon in this case was personal and not real property.

"Things real," says Chancellor Kent, "consist of lands, tenements, and hereditaments. The latter is a word almost as comprehensive as property, for it means anything capable of *being inherited,* be it corporeal, incorporeal, real, personal, or mixed. The term 'real estate' means an estate in fee or for life in land, and does not comprehend terms for years or any interest short of a freehold. A tenement comprises everything which may be holden, so as to create a tenancy, in the feudal sense of the word, and no doubt it includes things incorporate, though they do not lie in tenure. Corporeal hereditaments are confined to land,

which, according to Lord Coke, includes not only the ground or soil, but everything which is attached to the earth, whether by the course of nature, as trees, herbage, and water, or by the hand of man, as houses and other buildings; and which has an indefinite extent, upwards as well as downwards, so as to include everything terrestrial, under or over it. Incorporeal tenements and hereditaments comprise certain inheritable rights which are not, strictly speaking, of a corporeal nature or land, although they are, by their own nature, or by use annexed to corporeal inheritances, and are rights issuing out of them, or concern them. They pass by deed, without livery, because they are not tangible rights. . . . The incorporeal hereditaments which subsists by our law are fewer than those known and recognized by the English law." [3 Kent, Com. 401, 402.] See also 5 Mod. Am. Law, 2; 6 Mod. Am. Law, 6, § 9.

The property which was levied on was then at the common law and under the definitions contained in the North Dakota Codes not real estate, but a mere chose in action and therefore personal property.

On this subject, Pomeroy in § 367 of his work on Equity Jurisprudence says: "What is the effect at law of a contract whereby the owner agrees to sell and convey a designated tract of land, but which is not a true conveyance operating as a present transfer of the legal estate and the legal seisin? It is wholly, in every particular, executory, and produces no effect upon the respective estates and titles of the parties, and creates no interest in, nor lien or charge upon, the land itself. The vendor remains to all intents the owner of the land; he can convey it to a third person free from any legal claim or encumbrance; he can devise it in the same manner; on his death intestate it descends to his heirs. The contract in no manner interferes with his legal right to and estate in the land, and he is simply subject to the legal duty of performing the contract, or to the legal liability of paying such damages for its nonperformance as a jury may award, which are collectable from his property generally. On the other hand, the vendee acquires no interest nor property right whatever; he can maintain no proprietary nor possessory action for its recovery. His right is a mere thing in action to recover compensation in damages for a breach from the vendor, and his duty is a debt,—an obligation to pay the stipulated price; on his death both this right and this duty pass to his personal representatives, and not to his heirs. In short, the vendee obtains at law no real property

nor interest in real property. The relations between the two contracting parties are wholly personal. No change is made until by the execution and delivery of a deed of conveyance the estate in the land passes to the vendee." See also Bogart v. Perry, 1 Johns. Ch. 52; Davis v. Williams, 130 Ala. 530, 54 L.R.A. 749, 89 Am. St. Rep. 55, 30 So. 488.

This is the nature of the school-land contract in question. The title is retained by the state until the terms of the contract have been fully performed as well as the right to cancel upon a breach of its terms by the vendee. There is no essential difference between a school land and any other executory land contract. Jeffries v. Sherburn, 21 Ind. 112.

In both cases the purchaser becomes the beneficial owner in equity, and the vendor retains the legal title in trust for such vendee. Woodward v. McCollum, 16 N. D. 42, 111 N. W. 623; Clapp v. Tower, 11 N. D. 556, 93 N. W. 862; Pom. Eq. Jur. § 105.

We have held, however, that an executory land contract "produces no effect upon the respective estates and titles of the parties, and creates no interest in, nor lien or charge upon, the land itself. The vendor remains to *all intents the owner of* the land; he can convey it to a third person free from any legal claim or encumbrance. . . . *In short, the vendee obtains at law no real property nor interest in real property.* The relations between the two contracting parties are wholly personal." And that, therefore, § 7691, Compiled Laws of 1913, being § 7082, Rev. Codes 1905, which provides that a judgment when docketed "shall be a lien on all the real property, etc.," creates no lien on the mere equitable estate or interest of the judgment debtor in real property. Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976.

But counsel, in support of his contention that the property in question was real as opposed to personal property, calls our attention to § 10,368, Comp. Laws 1913, which provides that: "The term 'real property' includes every estate, interest and right in lands, tenements and hereditaments."

This definition, however, is to be found in the Penal Code, and nowhere else, and is directly opposed to the definitions elsewhere given and to which we have before referred. It must be taken in connection with § 10,356, Comp. Laws 1913, also a part of the Penal Code, which

provides that: "Whenever the terms mentioned in the following sections are employed in this Code, they are deemed to be employed in the senses hereafter affixed to them, except when a different sense plainly appears."

It plainly relates to the Criminal Code alone, and its purpose was clearly to merely give persons in the possession of real property the protection of the criminal laws no matter what their tenure or title might be.

He then cites a number of cases, none of which, however, when closely analyzed, are applicable here.

Of these the case of Simonson v. Wenzel, 27 N. D. 638, L.R.A.—, —, 147 N. W. 804, involved the recording act merely, and the construction of the word conveyance as used in that instrument. The question was whether that word included a mortgage on the executory interest of a purchaser under a land contract.

It is true that by way of *dicta* we intimated that the vendees' interest was real property, but the case really turned on the definition of the word "conveyance" which was contained in the recording act. Section 5039, Rev. Codes 1905, being § 5595, Comp. Laws 1913, provided that: "The term 'conveyance' as used in the last section, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged or encumbered, or by which the title to any real property may be affected, except wills and powers of attorney."

The land contract in question in that case, and the mortgage thereon, even if they did not convey real property, certainly conveyed an equitable *interest* therein, and certainly *affected* the title. Nor can there be any doubt that this interest could be levied upon or sold, and the case did not decide, nor was it necessary that it should decide, whether it should be so levied upon and sold as personal or as real property.

The case of Simonson v. Wenzel, indeed, did not attempt to overrule the prior case of Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712, Ann. Cas. 1914B, 976, and the two decisions must be taken together. We held in Cummings v. Duncan that the interest of the purchaser under the land contract was a mere *equitable estate or interest*. Being such an interest and an interest which affected the title, it was a conveyance under the terms of the recording act in the case of Simonson

v. Wenzel. We held in the Cummings' Case, however, that it was not real property, and the ruling in the Simonson Case in no way repudiated that holding.

The same distinction is to be found when we come to compare the case of Cummings v. Duncan with the cases from other jurisdictions which are cited by counsel for appellant. All of these cases which are at all applicable were decided under peculiar statutes which differ materially from our own.

The cases of Robertson v. Howard, 82 Kan. 588, 109 Pac. 697, and Poole v. French, 71 Kan. 391, 80 Pac. 997, merely construed the statutes of Kansas,—and those statutes (Kan. Gen. Stat. 1889, § 6687, ¶ 8) expressly provided that "the word 'land' and the phrases 'real estate' and 'real property' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal."

In the case of Hook v. Northwest Thresher Co. 91 Minn. 482, 98 N. W. 463, the statute construed was similar to that of Kansas and read: "The words 'lands,' 'realty,' and 'real estate' shall include lands, tenements, and hereditaments, and all rights thereto and interests therein." Minn. Rev. Laws 1905, § 5514, ¶ 9.

The case of Shephard v. Messenger, 107 Iowa, 717, 77 N. W. 515, construed a statute which read: "The word 'land' and phrases 'real estate' and 'real property' include lands, tenements, *and all rights thereto and interests therein equitable as well as legal.*" Miller's Rev. Code (Iowa) 1888, § 45, ¶ 8.

And the case of Allen v. Cadwell, 55 Mich. 8, 20 N. W. 692, was based upon a provision which read: "The word 'land' or 'lands,' and the words 'real estate' shall be construed to include lands, tenements, *and real* estate, and all rights thereto and interests therein." How. Anno. Stat. (Mich.) 2d ed. § 2, ¶ 9.

All that the case of Martin v. Bryson, 31 Tex. Civ. App. 98, 71 S. W. 615, held was that the interest of a vendee in a land contract was a vendible interest which could be levied upon. It did not consider or pass upon or discuss the question as to whether it was real property and should be levied upon as such. This point does not seem to have been raised.

In the case of Brooke v. Eastman, 17 S. D. 339, 96 N. W. 699, the question here involved was eliminated by a stipulation.

Nor are the remaining North Dakota cases which are cited by counsel for appellant in point here.

. In Krause v. Krause, 30 N. D. 54, 151 N. W. 991, not only was the point in issue here not discussed, but it was not directly involved. It was not an attachment or execution case. The execution proceedings were merely collateral. All that the court held, indeed, was "that while the lien of the judgment would not attach to the equitable interest of the plaintiff, yet after levy and sale it would."

It is true that we held in the case of Salzer Lumber Co. v. Claflin, 16 N. D. 601, 113 N. W. 1036, that the interest of a vendee under a land contract could be subjected to a mechanics' lien under the statute which gave a lien to materialmen for materials furnished under a contract with, or with the consent of the owner of land. The section of the Code, however, which granted this lien (Rev. Codes 1905, § 6237, Comp. Laws 1913, § 6814) was followed by § 6248, Comp. Laws 1913, § 6828, which defined the meaning of the term "owner" and provided that "every person for whose immediate use and benefit any building, erection or improvement is made, having the capacity to contract, including guardians of minors or other persons shall be included in the word 'owner' thereof."

The decision in the case was influenced entirely by this latter statute, and on the theory that the lien law should be liberally construed; and that as, under § 6243, Rev. Codes 1905, Comp. Laws 1913, § 6823, all that could be levied upon was the vendees' equitable interest, the vendor's rights as the legal owner were in no way affected. This case surely is not applicable here.

But it is argued that the attachment at any rate constituted a lien on the premises as the original levy antedated W. W. Miracle's sale and assignment of his contract rights to M. W. Miracle. In support of this contention counsel cites § 5594, Comp. Laws 1913.

It is to be noted, however, that this statute only gives an attachment a priority over unrecorded conveyances when that attachment is "at the suit of any party against the person *in whose name the title to such land appears of record,* prior to the recording of such conveyance." § 5594, Comp. Laws 1913.

In the case at bar and at the time of the attachment the record title was not in W. W. Miracle at all, but in the state; and it is clear, there-

fore, that § 5594, Comp. Laws 1913, does not apply. Lyman v. Gaar, S. & Co. 75 Minn. 207, 74 Am. St. Rep. 452, 77 N. W. 828; Coles v. Berryhill, 37 Minn. 56, 33 N. W. 213; Lebanon Sav. Bank v. Hollenbeck, 29 Minn. 322, 13 N. W. 145.

It is clear, also, that prior to the passage of § 5594, Comp. Laws 1913, which amended § 3594, Rev. Codes 1899, attachment creditors were not looked upon as good-faith creditors or protected as such (Kohn v. Lapham, 13 S. D. 78, 82 N. W. 408; Murphy v. Plankinton Bank, 13 S. D. 501, 83 N. W. 575), and that the attaching creditors' rights are now no greater than such as are expressly conferred by § 5594, Comp. Laws 1913.

The case of Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061, which is cited by counsel for appellant, does not apply, as the record title was in the attachment debtor.

We must then construe the statute in question as considering the interest of the purchaser to be personal property, unless another intention is plainly apparent.

But is there anything in the context of § 315, Comp. Laws 1913, which would intimate that, though personal property, the interest should, as far as the levy of an execution or attachment is concerned, be treated as real estate?

The statute expressly provides that the purchaser "his heirs and assigns" may take possession of the land and "maintain actions for the injuries done to the same;" that the contracts shall be recorded "in the same manner that deeds of conveyance are authorized to be recorded;" that a certificate of sale shall be issued to the purchaser; and that before the right of a purchaser at an execution sale to be subrogated to the rights of the original purchaser shall be complete there shall be a year for redemption and there shall be proof "that no claim of homestead has been made to said land by anyone."

Counsel for appellant argues that the provision that the purchaser is entitled to the possession "of the lands therein described, to maintain actions for injuries done to the same," evidences this intention.

The provision, however, does not in any way change the common law nor make a school-land contract any different from any other land contract, or, as far as that is concerned, from a bailment. One who is in the possession of property under a contract such as that which is

before us has for a long time and everywhere in America as far as we can learn been conceded the right to bring an action in his own name for injuries done both to his possession and to the property possessed, and the statute under consideration adds nothing to his rights in this respect. See 21 Enc. Pl. & Pr. 803; 5 Cyc. 209; 2 Greenl. Ev. 16th ed. § 616; Lawson, Bailm. § 15; Brewster v. Warner, 136 Mass. 57, 49 Am. Rep. 5.

Nor do we see any clear expression of that intention in the provision that in case of an execution sale of the interest of the original vendee the purchaser, in order to get a certificate of the assignment of such interest from the state, must make a showing "that no claim of homestead has been made to said land by anyone."

In this particular, land held under a school-land contract is no different than land held under any other land contract, and the statute in recognizing the right to a homestead gives no new rights and adds nothing to the law.

The general statutes which give the right to a homestead and which define the nature thereof, say nothing about the title, and under the decisions of this court the right may be asserted in land to which one has merely an equitable title. It of course cannot be asserted in any case against the vendor in a land contract, for it must at any rate be based on the equitable right, and where the contract is violated no such right exists, but it is otherwise good as against all of the world. It is a protection against creditors indeed, which is given by the law in all cases of homestead possession, irrespective of the nature of the title to the land involved. Bremseth v. Olson, 16 N. D. 242, 13 L.R.A.(N.S.) 170, 112 N. W. 1056, 14 Ann. Cas. 1155; Dieter v. Fraine, 20 N. D. 484, 128 N. W. 684; Spencer v. Geissman, 37 Cal. 96, 99 Am. Dec. 248; McKee v. Wilcox, 11 Mich. 359, 83 Am. Dec. 743.

We come, however, to an entirely different conclusion when we examine the provision that "the interest of a purchaser of any of the lands mentioned in this article that shall have been heretofore or may hereafter be levied upon or attached in any action brought to recover a debt due from said purchaser of said lands, and the interest of said purchaser which has heretofore been or may hereafter be sold under execution, and a certificate of sale may have been or shall hereafter be issued by the sheriff of the county to the party buying at said sale the

interest of said purchaser of said lands, and, after the expiration of one year from the date of sale the buyer of the interest of said purchaser of said lands may present to the land commissioners of this state a certificate of the sheriff of the county in which the land is situated showing said sale and the name and address of the person buying thereat, and also showing that one year has elapsed between the date of sale of said land and the date of making said certificate, also showing that no redemption has been made by the purchaser of said land."

We cannot, indeed, read this provision without becoming satisfied that, even though the interest involved was not real estate, the legislature nonetheless determined, and in this statute provided, that as far as a levy or attachment was concerned it should be treated as and considered as such.

We are satisfied, indeed, that the legislature not only intended this, but had the impression, at the time the statute was enacted, that the interest was a real-property interest. The statute in question was enacted in 1893. Up to this time there had been no express determination of this court on the nature of the interest of a vendee under a land contract in North Dakota,—the case of Cummings v. Duncan not being decided until January 25, 1912.

The procedure outlined by the legislature is surely in conformity with the procedure which would be adopted if the interest was real estate. It is presumed by the legislature that a certificate of sale will be issued by the sheriff. No such certificate is provided for in the case of personal property. In addition to this it is both presumed and provided that a year of redemption shall exist. No such redemption is provided for or contemplated by the statute in the case of personal property.

The judgment of the District Court is reversed, and the cause remanded, with directions to enter judgment according to the prayer of the defendant and appellant, Dodson, Fisher. Brockman Company.

Burke, J. I concur in result.