ERIC W. KRUGER AND ANN W. KRUGER, APPELLANTS, V. JOHN SHRAMEK AND TAMMY S. SHRAMEK, APPELLEES.

565 N.W.2d 742

Filed June 17, 1997.    No. A-95-1321.

J. Patrick Green and John P. Grant for appellants.

Lisa M. Meyer and John P. Mullen, of Gaines, Mullen, Pansing & Hogan, for appellees.

MILLER-LERMAN, Chief Judge, and HANNON and INBODY, Judges.

MILLER-LERMAN, Chief Judge.

## INTRODUCTION

Eric W. Kruger and Ann W. Kruger appeal the judgment of the district court for Douglas County denying their motion for new trial following denial of their request for injunctive relief. The Krugers filed a petition against John Shramek and Tammy S. Shramek, who own a lot abutting the Krugers' lot in the Eagle Run West subdivision in Omaha, Nebraska. The Krugers claimed, inter alia, that the Shrameks violated the restrictive covenants of the subdivision and have created a private nuisance by the grading of their property, the landscaping of their backyard, and the installation of a boundary fence in their backyard and that these changes made by the Shrameks have interfered with the view the Krugers had hoped to have from the

house they plan to build on their lot. There was also a trespass action tried below. However, no issues arising from the trespass action are before us. The district court denied the Krugers' request for injunctive relief and their subsequent motion for new trial. For the reasons stated below, we affirm.

## FACTUAL BACKGROUND

The Krugers purchased Lot 100 in Eagle Run West in late 1991. At the time of the hearing in August 1995, the Krugers had not yet built a home on their lot. In June 1993, the Shrameks purchased Lot 101, which is the next lot to the south of the Krugers' lot. Both Lots 100 and 101 abut the 18th hole of the Champions Golf Course. Both lots are subject to certain restrictive covenants. The relevant portions of the restrictive covenants will be discussed below.

In 1993, the Shrameks began constructing their home. They discussed their plans for construction and landscaping with Robert Horgan, the developer of the subdivision, and Horgan orally approved. Horgan gave written approval for the Shrameks' construction and landscaping plans on August 8, 1994, as required by the restrictive covenants.

After the Shrameks began landscaping their backyard, which abuts the golf course, the Krugers began to protest. The Krugers were concerned that the Shrameks' regrading of their backyard caused more water to flow from the Shrameks' lot to their lot and that the change of grade, landscaping, and fence on the Shrameks' lot could obstruct the Krugers' view of the 18th green from the proposed site of the Krugers' future patio. After the Krugers voiced their concerns, it appears that the Shrameks attempted to accommodate them. The Shrameks put their down-spouts underground and ran them to the golf course and changed their landscaping. Regarding their landscaping, the Shrameks removed a berm, transplanted trees closer to their house, and removed some of the fill dirt near the property line between their lot and that of the Krugers. The Krugers remained dissatisfied with the potential obstruction of their view caused by the Shrameks' backyard improvements.

On January 13, 1995, the Krugers filed a petition seeking injunctive relief. They requested that the court issue an order

requiring the Shrameks to restore the rear of their property to its original grade, remove the present fence, and remove the "mass plantings." The Krugers alleged, inter alia, that the Shrameks' improvements were a private nuisance and a violation of the restrictive covenants. The Shrameks generally denied the allegations of the petition.

A hearing was held August 23 and 24, 1995. The Krugers' witnesses included the Krugers, John Shramek, the Krugers' architect, a geotechnical engineer, a landscape architect, and a registered professional land surveyor. Defense witnesses included John Shramek, Horgan, a civil engineer, and a home builder.

In addition to the general facts recited above, there was also conflicting evidence regarding whether the Shrameks had materially changed the grade of their lot, whether the Shrameks' change of grade in their lot caused a drainage flow problem for the Krugers' lot, and whether the Shrameks needed to bring in dirt to construct their house due to the slope of the lots. Other facts necessary to the resolution of this appeal will be discussed below.

After hearing all of the evidence and inspecting the premises, the district court denied injunctive relief in an order dated September 29, 1995. The district court found, based on its observation of the premises, that the change in grade on the Shrameks' property obscured the Krugers' proposed view of the 18th green from the site of their proposed patio in that the Krugers' view of the golf course prior to the Shrameks' improvements was approximately 180 degrees and that this view was now obscured approximately 20 degrees. The district court also found that the Krugers' view may not be obscured at all when viewed from a proposed porch after construction. The district court concluded that the improvements made to the Shrameks' property were not so substantial an invasion of the Krugers' use of their property to justify the injunctive relief requested and that due to Horgan's approval of the Shrameks' construction and landscaping plans, the restrictive covenants were not violated. The district court awarded the Krugers $1,600 for damages for trespass. On October 10, the Krugers filed a motion for new trial or, in the alternative, for modification of judgment. Under

the Nebraska cases, a motion for new trial following denial of an injunction tolls the time for appeal. See, e.g., *Bauer v. Lancaster Cty. Sch. Dist. 001*, 243 Neb. 655, 501 N.W.2d 707 (1993); *Witzel v. Village of Brainard*, 208 Neb. 231, 302 N.W.2d 723 (1981). The motion for new trial was overruled November 8. This appeal followed.

## ASSIGNMENTS OF ERROR

The Krugers assign as error that the district court erred in not concluding that the changes on the Shrameks' lot constituted an enjoinable nuisance, not concluding that the changes on the Shrameks' lot violated the restrictive covenants and were subject to injunction, and not finding that any permission given by Horgan to the Shrameks was arbitrary and capricious.

## STANDARD OF REVIEW

■ An action for injunctive relief sounds in equity. *Omega Chem. Co. v. United Seeds*, 252 Neb. 137, 560 N.W.2d 820 (1997); *Sid Dillon Chevrolet v. Sullivan*, 251 Neb. 722, 559 N.W.2d 740 (1997). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Siffring Farms, Inc. v. Juranek*, 252 Neb. 150, 561 N.W.2d 203 (1997); *Omega Chem. Co., supra*; *Sid Dillon Chevrolet, supra*; *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996); Neb. Rev. Stat. § 25-1925 (Reissue 1995). Where the trial court has viewed the premises, an appellate court is required to consider any competent and relevant facts revealed by the view and any findings made by the court, provided that the record contains competent evidence to support the findings. *Burgess v. Omahawks Radio Control Org.*, 219 Neb. 100, 362 N.W.2d 27 (1985).

■ An appellate court has an obligation to reach its own independent conclusions as to questions of law. *Barry v. Tanner*, 250 Neb. 116, 547 N.W.2d 730 (1996).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld on appeal in the absence of an abuse of that discretion. *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997).

## ANALYSIS

*Injunctive Relief.*

■ We note that the Krugers request injunctive relief. An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Omega Chem. Co., supra*; *Ben Simon's, Inc. v. Lincoln Joint-Venture*, 248 Neb. 465, 535 N.W.2d 712 (1995).

*Private Nuisance.*

We first address whether the district court erred in concluding that the improvements made by the Shrameks did not constitute a private nuisance and in denying injunctive relief on that basis.

■ A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of his or her land. *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139 (1989). The Nebraska Supreme Court has expressly adopted the law of private nuisance actions as articulated in the Restatement (Second) of Torts (1979), specifically citing § 822 with approval as expressing a " 'suitable standard to determine when one may be subject to liability . . . .' " *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 851, 510 N.W.2d 41, 47 (1994) (quoting *Hall, supra*). Section 822 of the Restatement provides that one is subject to liability for a private nuisance if, but only if, his or her conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land and the invasion is intentional and unreasonable. With respect to a nuisance in the context of an action in equity, the invasion of or interference with another's private use and enjoyment of land must be substantial. *Omega Chem. Co., supra*; *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994).

■ The Krugers ask us to conclude that an interference consisting of a partial obstruction of a view constitutes a private

nuisance. Although this issue has not been determined by either this court or the Nebraska Supreme Court, there is a clear majority rule in other jurisdictions. The general rule is that a lawful building or structure cannot be complained of as a private nuisance merely because it obstructs the view of neighboring property. See, *44 Plaza, Inc. v. Gray-Pac Land Co.*, 845 S.W.2d 576 (Mo. App. 1992); *Collinson v. John L. Scott, Inc.*, 55 Wash. App. 481, 778 P.2d 534 (1989); *Mohr v. Midas Realty Corp.*, 431 N.W.2d 380 (Iowa 1988); *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 99 Cal. Rptr. 350 (1971); *Scharlack v. Gulf Oil Corporation*, 368 S.W.2d 705 (Tex. Civ. App. 1963); *Wolf et al. v. Forcum et al.*, 130 Ind. App. 10, 161 N.E.2d 175 (1959).

The above rule finds its genesis in the repudiation of the traditional English doctrine of ancient lights. Under that doctrine, a landowner acquired an easement for light across an adjoining landowner's property and could prevent the adjoining landowner from obstructing the light once the easement was established by the passage of time. See, *Collinson, supra*; *Mohr, supra*; *Prah v. Maretti*, 108 Wis. 2d 223, 321 N.W.2d 182 (1982); *Venuto, supra*. The ancient lights doctrine as applied to claims involving views has been repudiated by every state considering it. One basis for the doctrine's repudiation is that " ' "it is not adapted to the conditions existing in this country and could not be applied to rapidly growing communities without working mischievous consequences to property owners." ' " *Collinson*, 55 Wash. App. at 485, 778 P.2d at 537 (quoting *Venuto, supra*). See, also, *Mohr, supra*; *Prah, supra*. An additional basis for the doctrine's repudiation is that providing a landowner with what is essentially an unwritten negative prescriptive easement over a neighbor's property would frustrate the purpose of the recording statutes, one objective of which is to ensure that all property rights are recorded and discoverable by a diligent title search. *Mohr, supra*.

We adopt the majority rule that a lawful building or structure, including landscaping improvements associated with any such building or structure, cannot be complained of as a private nuisance merely because it obstructs the view of neighboring property. Based upon this proposition of law and our determination

below that the improvements made by the Shrameks were lawful, we conclude that the district court did not err in denying the Krugers injunctive relief based on their private nuisance theory.

*Restrictive Covenants.*

We next address whether the district court erred in failing to grant injunctive relief based on the Shrameks' alleged violations of the applicable restrictive covenants. The Krugers allege that the Shrameks violated the applicable restrictive covenants in changing the grade of their lot by spreading dirt on the rear of their property, installing a 5-foot fence, and planting trees in their backyard. The Shrameks contend that all improvements they made on their property were done with the approval of Horgan, as required by the restrictive covenants and, therefore, do not violate the restrictive covenants.

In relevant part, the restrictive covenants provide:

2. No residence, building, fence, wall, driveway, patio, patio enclosure . . . or other external improvement, above or below the ground (herein all referred to as any "Improvement") shall be constructed, erected, placed or permitted to remain on any Lot, nor shall any grading or excavation for any Improvement be commenced, except for Improvements which have been approved by Declarant [Horgan] as follows:

(a) An Owner desiring to erect an Improvement on any Lot shall deliver two sets of construction plans, landscaping plans and plot plans to Declarant . . . . Such plans shall include a description type, quality, color and use of materials proposed for the exterior of such Improvement. . . .

(b) Declarant shall review such plans in relation to the type and exterior of improvements constructed, or approved for construction, on neighboring Lots and in the surrounding area, and any general scheme or plans formulated by Declarant. In this regard, Declarant intends that the Lots shall be a developed residential community with homes constructed of high quality materials. The decision to approve or refuse approval of a proposed Improvement shall be exercised by Declarant to promote development of the Lots and to protect the values, character and residen-

tial quality of all Lots. If Declarant determines that the proposed Improvement will not protect and enhance the integrity and character of all the Lots and neighboring lots as a quality residential community, Declarant may refuse approval of the proposed Improvement.

. . . .

11. All fences must be approved by Declarant pursuant to Section 2 of this Article. Unless otherwise specially approved by Declarant: (i) no fence shall extend beyond the center line of the main residence structure on the Lot; (ii) perimeter fences or walls or hedges or mass plantings on Lots which have common boundaries with [the golf course] shall not exceed four (4) feet in height; further any fence constructed on such common boundary Lots shall be split rail, picket, wrought iron or other open type of fencing; (iii) no hedges or mass plantings shall be permitted more than ten (10) feet in front of the front building line of the residence on a Lot; and (iv) no fence shall exceed six (6) feet in height.

A requirement in restrictive covenants of consent to construction or approval of plans of construction is valid and enforceable when standards are imposed upon which disapproval might be based. *Normandy Square Assn. v. Ells*, 213 Neb. 60, 327 N.W.2d 101 (1982); Annot., Validity and Construction of Restrictive Covenant Requiring Consent to Construction on Lot, 40 A.L.R.3d 864 et seq. (1971). The restrictive covenants in question provide, inter alia, that approval or disapproval by Horgan shall be exercised to promote development and to protect the values, character, and residential quality of all lots, and to enhance the integrity and character of all the lots and neighboring lots as a quality residential community. Therefore, the requirement of approval by Horgan in the restrictive covenants before us, which also include these and other standards for approval and disapproval of plans, is valid and enforceable.

A review of the evidence shows that Horgan, the developer of the subdivision and the declarant in the above restrictive covenants, expressly approved all construction and landscaping plans of the Shrameks, including the improvements about

which the Krugers complain, so as to comport with the standards enumerated in the restrictive covenants. As a result, such improvements were not made in violation of the restrictive covenants.

In their brief, the Krugers also argue that any approval given by Horgan was arbitrary and capricious. However, a review of the record shows that notwithstanding the Krugers' dissatisfaction with such approval, such an argument was neither pled nor raised by the evidence in the court below. As such, it is not a proper issue to be heard or addressed on appeal. See, *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996); *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994). Even if raised properly below, there is nothing in the record before us suggesting that Horgan's approval of the Shrameks' construction and landscaping plans was arbitrary and capricious. The evidence established that the Shrameks consulted Horgan regarding their construction and landscaping plans, provided the plans to him, and received Horgan's approval. The evidence also shows that the Shrameks' construction and landscaping were similar to those on other lots in the neighborhood and improved the value of their lot and neighboring lots so as to enhance the integrity and character of all the lots as a quality residential community.

Finding no merit in the Krugers' assigned errors, we affirm.

AFFIRMED.