2017 ND 197

**Curtis G. HOKANSON and Joan Hokanson, Plaintiffs and Appellants**

**v.**

**Corinne ZEIGLER, individually and as heir/ devisee to Charles Zeigler a/k/a Andrew Charles Zeigler, Bonnie Scharback, Terry Scharback, Bruce Bibler, Beverly Bibler, Delton R. Bibler, Lee Bibler, Curtis D. Bibler, Carol M. Bibler, Gerald Bibler, Alice Bibler, Trudy Mathae, Bruce Mathae,**

**Kevin M. Bibler, Defendants and Appellees**

**and**

**all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint, Defendants**

**No. 20160359**

Supreme Court of North Dakota.

Filed 7/31/2017

Scott M. Knudsvig (argued) and Matthew H. Olson (on brief), Minot, ND 58702-1000, for plaintiffs and appellants.

Elizabeth A. Elsberry (argued) and Christopher E. Rausch (appeared), Bismarck, ND 58501, for defendants and appellees.

Kapsner, Justice.

[¶1] Curtis and Joan Hokanson appeal from a district court judgment dismissing their action to quiet title with prejudice after granting the Biblers' motion for summary judgment and denying the Hokansons' motion for summary judgment. We affirm the district court judgment.

I

[¶2] On March 4, 2014, Curtis and Joan Hokanson ("Hokansons") initiated a quiet title action naming Corrine Zeigler, Charles Zeigler, Bonnie Scharback, Terry Scharback, Bruce Bibler, Beverly Bibler, Delton R. Bibler, Lee Bibler, Curtis D. Bibler, Carol M. Bibler, Gerald Bibler, Alice Bibler, Trudy Mathae, Bruce Mathae, Howard L. Bibler, Continental Resources, Inc., and all other persons unknown ("Biblers") claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint as defendants.

[¶3] In 1957, the Board of University and School Lands of the State of North Dakota and Edson and June Bibler entered into an installment sale contract for the purchase of land located at Township 158 North, Range 99 West, Section 16: NE 1/4 in Williams County ("CONTRACT FOR SALE"). The CONTRACT FOR SALE provided Edson and June Bibler paid a down payment and were required to pay a specific amount per year until fulfilling the contract price. The CONTRACT FOR SALE indicated if the "said vendee, his heirs, assigns or other legal representatives, shall pay or cause to be paid" the purchase price and interest in the manner specified in the contract, the State would issue "a Patent for the said premises; said patent, however, shall reserve to the grantor all coal, oil, natural gas, uranium, gravel, clay and other minerals." In 1967, Edson and June Bibler conveyed the same property to Hans Hanson by warranty

deed ("1967 Warranty Deed"). The 1967 Warranty Deed included a reservation that stated:

> EXCEPTING AND RESERVING unto [Edson and June Bibler], their heirs and assigns, forever, all of the oil, gas, casinghead gas and gasoline, condensate, and all related hydrocarbons, sulphur, uranium, ferrous and non-ferrous metals and other minerals (except gravel and coal) on, in and under the above described real property, together with the right of ingress and egress for the purpose of prospecting, drilling, and mining for and producing them, and saving, storing, transporting and piping the same away.

The 1967 Warranty Deed also warranted there were no encumbrances on the land except the "indebtedness due the State of North Dakota ..., which [Hans Hanson] assumes and agrees to pay." In October 1971, Hans Hanson conveyed the same parcel of land to Curtis and Joan Hokanson using a warranty deed ("1971 Warranty Deed"). The warranty clause of the 1971 Warranty Deed contained boilerplate language indicating the land was conveyed free from all encumbrances. The following was also typed into the blank space provided in the warranty clause: "and except easements of record and subject to exceptions, reservations and conveyances of oil, gas and other minerals of record." In October 1971, the State of North Dakota issued a patent for the same parcel of land to Hans Hanson ("1971 Patent"). The 1971 Patent conveyed the surface and indicated the State had reserved "50% of all oil, natural gas and other minerals[.]"

[¶4] Prior to the initiation of the quiet title action by the Hokansons, the Biblers entered into oil and gas leases on July 9, 2013. The Biblers were named as the lessors, and the lessee in all the leases was Continental Resources. All leases were dated July 9, 2013. The Hokansons claimed they had title to an undivided 50% mineral interest under the property described as Township 158 North, Range 99 West, Section 16: NE 1/4 in Williams County. On March 14, 2014, the Biblers answered and counterclaimed. The Biblers argued they had title to the mineral interests under the subject property. On March 31, 2014, the Hokansons answered the counterclaim.

[¶5] In August 2015, both the Hokansons and the Biblers filed competing motions for summary judgment. In September 2015, both the Hokansons and the Biblers filed responses to the opposing motions. In their brief in support of their motion for summary judgment, the Hokansons argued they had a 50% mineral interest in the subject property. The Hokansons argued they received this interest because the subject property was conveyed to them from Hans Hanson with no reservations of mineral interest appearing in the 1971 Warranty Deed. The Hokansons argued the predecessor in interest to Hans Hanson was the State of North Dakota who conveyed to Hans Hanson the surface and 50% of the mineral interest by the 1971 Patent. The Hokansons argued the Biblers attempted to rely on two other recorded documents: a 1957 land installment contract between the State of North Dakota and Edson and June Bibler ("CONTRACT FOR SALE"); and the 1967 Warranty Deed wherein the Biblers purport to convey the subject property to Hans Hanson and reserve "all of the" minerals. The Hokansons noted the 1957 CONTRACT FOR SALE was not recorded until 1981. The Hokansons argued they were entitled to judgment as a matter of law and were entitled to quiet title to the 50% mineral interest in the subject property. The Hokansons argued the parties' intentions were clear from the 1971 Patent conveying the property from the State to Hans Hanson and the 1971 Warranty Deed conveying

from Hans Hanson the same property to the Hokansons.

[¶6] The Biblers argued the 1971 Patent made no transfer of a mineral interest to the Hokansons' predecessor in interest, Hans Hanson. The Biblers noted they succeeded in interest to the 50% mineral interest by way of a personal representative deed of distribution in 1990. The Biblers asserted while the personal representative deed of distribution and associated documents did not "pertain to the heart of the issue before [the district court], they do confirm how the Bibler Defendants succeeded to the Subject Minerals previously held by Edson and June Bibler, as joint tenants." The Biblers argued the Hokansons had quoted the language of the 1971 Patent out of context by stating the Patent "includ[ed] 50% of all oil, natural gas and other minerals which may be found on or underlying such land." The Biblers argued the 1957 CONTRACT FOR SALE between the State and Edson and June Bibler, although claiming to reserve all of the minerals to the State, reserved only 50% under N.D.C.C. § 38-09-01. The Biblers argued the remaining 50% of the minerals were conveyed to them from the State by way of the 1957 CONTRACT FOR SALE. The Biblers argued the 1967 Warranty Deed conveyed 100% of the surface to Hans Hanson and reserved all of the mineral interests the Biblers owned, that being an undivided 50% of the mineral interest. The Biblers argued the 1971 Patent conveyed 100% of the surface and specifically reserved to the State 50% of the mineral interests.

[¶7] The district court held a hearing on the competing summary judgment motions on December 11, 2015. The district court entered an order granting the Biblers' motion for summary judgment on July 15, 2016. On August 12, 2016, the district court entered an amended order to correct the legal description. The district court entered judgment on August 24, 2016. The Hokansons filed a notice of appeal on October 24, 2016.

II

[¶8] The mineral interest disputed in this case is part of grant lands which may not be disposed of except under the authority of general laws providing for such disposition. The first document dealing with the transfer of this parcel of grant lands to a private party is the 1957 CONTRACT FOR SALE between the State and Edson and June Bibler. The 1957 CONTRACT FOR SALE provided for the sale of land owned by the North Dakota Board of University and School Lands.

[¶9] This Court previously described the framework of law under which the sale of such grant lands is governed:

When North Dakota was admitted to the Union in 1889, it received several million acres of land from the public domain for the support and maintenance of schools. Act of Feb. 22, 1889, 25 Stat. 676, § 10 (reprinted in 13 N.D.C.C. at 63, 68) [hereafter "Enabling Act"]; see Smith, *State Lands: What Are We Doing?*, 51 N.D.L.Rev. 477 (1974). This land, commonly known as school trust land, is held in trust by the State and carries numerous restrictions upon transfer. Section 11 of the Enabling Act provides, in part:

"That all lands granted by this act shall be disposed of only at public sale after advertising—tillable lands capable of producing agricultural crops for not less than $10 per acre and lands principally valuable for grazing purposes for not less than $5 per acre. Any of the said lands may be exchanged for other lands, public or private of equal value and as near as may be of equal area, but if any of the said

lands are exchanged with the United States such exchange shall be limited to surveyed, nonmineral, unreserved public lands of the United States within the state.

. . . .

"The state may also, upon such terms as it may prescribe, grant such easements or rights in any of the lands granted by this act, as may be acquired in privately owned lands through proceedings in eminent domain: provided, however, that none of such lands, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, has been paid or safely secured to the state."

These restrictions were accepted by the State and incorporated into the constitution. N.D. Const. Art. XIII, § 3. *State ex rel. Bd. of Univ. & Sch. Lands v. Sherwood*, 489 N.W.2d 584, 585 (N.D. 1992).

[¶10] The legislature has since "enacted numerous statutes implementing these provisions of the Enabling Act and constitution." *Sherwood*, 489 N.W.2d at 586. Chapter 15-08 of the North Dakota Century Code contains statutory provisions relating to original grant and nongrant lands. Section 15-08-15, N.D.C.C., was adopted, with no amendments, from N.D.R.C. § 15-0815 (1943). Section 15-0815, N.D.R.C., provides:

The fee of each parcel of land sold on contract shall remain in the state until a patent or deed is issued therefor as provided in this title. After a failure on the part of the purchaser, or his heirs or assigns, to comply with the terms of the contract or with the provisions of law

applicable thereto, any person being or continuing in possession of any such lands without the written permission of the commissioner shall be deemed to detain the land forcibly and without right and to be a trespasser thereon.

"Patents for original grant lands sold under the provisions of this title must be issued to the purchaser or the purchaser's heirs or assigns, when payment is made in full for the lands and all the terms of the contract of purchase are performed." N.D.C.C. § 15-08-16. "The recorders of the several counties are authorized to record all patents issued by the governor pursuant to the provisions of this title, and the record thereof has the same effect as the record of other conveyances executed according to the laws of this state." N.D.C.C. § 15-08-17.

[¶11] The text of the 1957 CONTRACT FOR SALE provided the State would transfer ownership of the surface land while reserving all of the minerals. However, section 38-09-01, N.D.C.C., is applicable to transfers of land by the State, including original grant lands. *Haag v. State*, 219 N.W.2d 121, 130 (N.D. 1974). At the time of the execution of the CONTRACT FOR SALE, N.D.R.C. § 38-0901 altered the written terms of contracts for the sale of grant lands by the State by operation of law. Section 38-09-01, N.D.C.C., is nearly identical to its predecessor, N.D.R.C. § 38-0901 (1943), and provides:

In every transfer of land, whether by deed, contract, lease, or otherwise, by the state of North Dakota, or by any department thereof, fifty percent of all oil, natural gas, or minerals which may be found on or underlying such land shall be reserved to the state of North Dakota. Any deed, contract, lease, or other transfer of any such land made after February 20, 1941, which does not contain such reservation must be con-

strued as if such reservation were contained therein. The provisions of this section apply to all lands owned by this state or by any department thereof regardless of how title thereto was acquired.

This Court explained the applicability and impact of N.D.R.C. § 38-0901 (1943):

This statute contains a double restriction. First, it provides: "In every transfer [...] fifty percent of all oil, [...] gas, or minerals [...] shall be reserved to the state of North Dakota." It further provides that, "any deed[, contract, lease, or other transfer of any such land] made after February 20, 1941, which does not contain such reservation shall be construed as if such reservation were contained therein." This means that the interest in the land which the State may reserve in any transfer, is limited to one-half of the "gas, oil, and other minerals." Where land is sold by the State, no further reservation of any title or interest in the land may be made.

. . . .

The contract must be construed to reserve no more and no less than the statute requires.

*Convis v. State*, 104 N.W.2d 1, 4-5 (N.D. 1960).

[¶12] Article IX of the North Dakota Constitution was amended June 28, 1960 to state: "In all sales of lands subject to the provisions of this article all minerals therein . . . shall be reserved and excepted to the state of North Dakota . . . ." N.D. Const. art. IX, § 5. This provision, contrary to the 50% mineral reservation as provided in N.D.C.C. § 38-09-01, applies to transfers of school lands made after June 28, 1960. *See Abbey v. State*, 202 N.W.2d 844, 854 (N.D. 1972) ("As a result of the amendment [to Article IX], made in 1960, it will be noted that all land granted to the State for the support of common schools may now be sold, but that the sale must now be made subject to a reservation of all minerals, including coal."). The CONTRACT FOR SALE was executed on March 14, 1957 in this case. As a result, despite the fact the contract provides the State reserved all minerals, the contract must be read to reserve 50% of the minerals to the State. The 1971 Patent issued in this case reflects this understanding as it contains a reservation unto the State of 50% of the minerals associated with the subject property.

[¶13] Aside from the 1957 CONTRACT FOR SALE, this case involves the following documents found in the chain of title: the 1967 Warranty Deed conveying from Edson and June Bibler to Hans Hanson the surface property that was the subject land of the CONTRACT FOR SALE while reserving "all" of the mineral interest to Edson and June Bibler; the 1971 Warranty Deed conveying from Hans Hanson to Curtis and Joan Hokanson the same land with no reservation of any mineral interest; and the 1971 Patent conveying to Hans Hanson the subject land of the CONTRACT FOR SALE while reserving to the State 50% of the minerals. The parties do not dispute the State lawfully reserved 50% of the minerals associated with the subject property. The parties dispute who is the lawful owner of the remaining 50% mineral interest.

III

[¶14] The district court noted the parties agreed there were no genuine issues of material fact and that the matter was ripe for a determination as a matter of law. The district court granted summary judgment to the Biblers and determined the Biblers owned the remaining 50% mineral interest. On appeal, the Hokansons argue the district court erred when it granted the Biblers' motion for summary

judgment and found the Biblers owned a 50% mineral interest in and under the property in question. The Hokansons ask this Court to reverse and remand for entry of summary judgment in their favor. This Court's standard of review of a district court's grant of summary judgment is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 8, 816 N.W.2d 31 (citations omitted).

[¶15] The 1957 CONTRACT FOR SALE provided a schedule of payments to be made and that upon full payment under the terms of the contract, the State would issue a patent for the land. The CONTRACT FOR SALE also stated: "Possession and interest to begin immediately after the sale." The CONTRACT FOR SALE required the vendee (Edson and June Bibler) to carry fire and tornado insurance. Additionally, the CONTRACT FOR SALE stated in the event the vendee "defaults in any of the said payments of principal or interest and taxes at the time and in the manner herein provided, or fails to keep the improvements in husbandly manner and good repair, then the State of North Dakota, through its Board of University and School Lands, may declare this contract and agreement null and void and cancelled and of no further force and effect . . . ."

[¶16] The 1967 Warranty Deed conveyed from Edson and June Bibler to Hans Hanson the same surface land. In its granting clause, the 1967 Warranty Deed stated:

> EXCEPTING AND RESERVING unto [Edson and June Bibler], their heirs and assigns, forever, all of the [minerals] (except gravel and coal) on, in and under the above described real property, together with the right of ingress and egress for the purpose of prospecting, drilling, and mining for and producing them, and saving, storing, transporting and piping the same away.

The 1967 Warranty Deed also warrants that the land conveyed is free from all encumbrances, "EXCEPT that indebtedness due the State of North Dakota on [the subject land] which [Hans Hanson] assumes and agrees to pay."

[¶17] The Biblers argue in the 1967 Warranty Deed, Edson and June Bibler reserved 50% of the mineral interests associated with the subject property because the 1967 Warranty Deed purports to reserve to the Biblers, "all of the oil, gas, . . . and other minerals . . . ." The Hokansons argue the operative document in this case is the 1971 Patent from the State which granted to Hans Hanson all the surface and reserved 50% of the minerals on and underlying the surface to the State, which

means the other 50% was conveyed to Hans Hanson. But the 1971 Patent reserved 50% of the minerals and is silent as to whom the remaining 50% of the minerals belonged.

[¶18] This case presents a question of law. The dispositive issue is whether a vendee under an installment sale contract for patent is treated the same as one under a contract for deed with regard to his or her ability to transfer and reserve equitable title received under the contract. We conclude an installment sales contract for patent is no different than a contract for deed with regard to the vendee's ability to convey and reserve an equitable interest obtained under the contract.

> When a sale [of grant lands] is on deferred payments, the equitable title passes to the purchaser, and the legal title remains in the State. The purchaser is then entitled to the possession, rents, and profits and is, as against all the world, except the State, treated as the owner.

73B C.J.S. *Public Lands* § 162 (2015) (footnotes omitted). This principle was long ago recognized by this Court. "The title is retained by the state until the terms of the contract have been fully performed as well as the right to cancel upon a breach of its terms by the vendee. There is no essential difference between a school land and any other executory land contract." *Sox v. Miracle*, 35 N.D. 458, 160 N.W. 716, 720 (1916) (citation omitted). "In both cases the purchaser becomes the beneficial owner in equity and the vendor retains the legal title in trust for such vendee." *Id.* (citations omitted). We affirm this principle with regard to a vendee's ability to reserve and transfer an equitable interest obtained under an installment sale contract for patent.

[¶19] A vendee under a contract for deed obtains an equitable interest in the property. *Farmers State Bank v. Slaubaugh*, 366 N.W.2d 804, 807 (N.D. 1985). "When a vendor sells real estate under a contract for deed he retains legal title, while the vendee acquires equitable title to the property." *Id.* (citing *Cummings v. Duncan*, 22 N.D. 534, 134 N.W. 712 (1912); *Woodward v. McCollum*, 16 N.D. 42, 111 N.W. 623 (1907); *Wadge v. Kittleson*, 12 N.D. 452, 97 N.W. 856 (1903)). "Under a contract for deed, the vendor retains the legal title to the property and holds it in trust for the purchaser and as security for the purchaser's compliance with the conditions of the contract." *Johnson v. Finkle*, 2013 ND 149, ¶ 17, 837 N.W.2d 132 (citations omitted). "The purchaser holds equitable title and generally has the right to the use and possession of the property." *Id.* (citations omitted). "The equitable title merges in the legal title when the terms of the contract for deed have been completed and the warranty deed is entered." *Id.* (citing *United Accounts, Inc. v. Larson*, 121 N.W.2d 628, 633 (N.D. 1963)). The full title does not vest until the entire purchase price is paid and the terms of the contract have been met. *Id.* The conveyance under the deed after the terms of the contract are met "does not create a new right, but rather perfects the right existing under the contract and gives effect to the parties' intent by perfecting title relating back to the date of the contract." *Id.* (citation omitted).

[¶20] A vendee under a contract for deed or an installment sale contract for patent may transfer equitable interests in real property and reserve a severable portion upon transfer. "A purchaser of school lands who has not yet received a patent or deed for the lands from the State nevertheless has an interest in the lands that the purchaser may convey to another." 73B C.J.S. *Public Lands* § 163 (2015). This Court has also

previously held that an "equitable interest in real estate under a contract for deed is subject to execution, levy, and sale." *Slaubaugh*, 366 N.W.2d 804 at 807. The terms of the 1957 CONTRACT FOR SALE required the vendee to obtain the vendor's written consent before assigning the contract or interest under the contract to another party. The Hokansons assert Edson and June Bibler's transfer of the land to Hans Hanson was not valid because the record does not contain written consent to any assignment of the contract. However, acceptance of this argument would defeat the Hokansons' chain of title. Further, the fact the patent names Hans Hanson as grantee is record evidence the State consented to the transfer.

[¶21] Applying these principles to the dispute before this Court, the 1971 patent issued by the State to Hans Hanson "perfect[ed] the right existing under the contact" and "perfect[ed] title relating back to the date of the contract." *Finkle*, 2013 ND 149, ¶ 17, 837 N.W.2d 132. Edson and June Bibler acquired an equitable title to the surface land and 50% of the minerals when they entered into the 1957 CONTRACT FOR SALE with the State. The reservation present in the 1967 Warranty Deed conveying the surface land to Hans Hanson reserved "all" the mineral interest to which Edson and June Bibler held equitable title: 50% of the minerals underlying the surface estate. When Edson and June Bibler conveyed the surface and reserved the minerals, they assumed the risk that Hans Hanson might fail to pay the remaining indebtedness due to the State. In such instance, under the 1957 CONTRACT FOR SALE, the State had the ability to "declare [the] contract and agreement null and void and cancelled and of no further force and effect." *See also* N.D.C.C. § 15-08-12 ("If the annual interest or any installment of the purchase price is not paid within thirty days after the same becomes due under the provisions of any contract for sale, or if the taxes are not paid upon the lands described in said contract in accordance with the provisions of the contract, the contract is voidable from the time of any such default."). In that event, Edson and June Bibler would have lost any minerals reserved under the 1967 Warranty Deed.

[¶22] We conclude, as a matter of law, the Biblers reserved equitable title to 50% of the minerals in the 1967 Warranty Deed conveying the surface estate to Hans Hanson and upon full payment and issuance of a patent to Hans Hanson, the Biblers' equitable interest in 50% of the minerals ripened into full legal title relating back to the date of the 1957 CONTRACT FOR SALE and as reserved in the 1967 Warranty Deed. Therefore, the district court did not err when it granted the Biblers' motion for summary judgment.

IV

[¶23] We affirm the district court judgment.

[¶24] Carol Ronning Kapsner

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers, Acting C.J.

[¶25] The Honorable Gerald W. VandeWalle, C.J., disqualified himself subsequent to oral argument and did not participate in this decision.