2017 ND 286

David and Virginia CEYNAR, Plaintiffs and Appellants

v.

Lonnie BARTH and The Ridge at Hawktree Homeowners' Association, Defendants and Appellees

No. 20170135

Supreme Court of North Dakota.

Filed 12/7/2017

Joshua A. Swanson, Fargo, N.D., for plaintiffs and appellants.

Steven J. Leibel, Bismarck, N.D., for defendant and appellee Lonnie Barth.

David J. Smith (argued) and Tyler J. Malm (on brief), Bismarck, N.D., for defendant and appellee The Ridge at Hawktree Homeowners' Association.

McEvers, Justice.

[¶ 1] David and Virginia Ceynar appeal from a summary judgment dismissing their breach of contract/covenant and nuisance action against Lonnie Barth and The Ridge at Hawktree Homeowners' Association. Because the district court did not err in ruling that the Association's restrictive

covenants were not violated, and because Barth's actions as a matter of law did not unreasonably interfere with the Ceynars' use and enjoyment of their property, we affirm.

I

[¶ 2] The Ceynars and Barth are neighbors at The Ridge at Hawktree, a Bismarck subdivision near a golf course, and are members of the Association. Before the Ceynars purchased their home, Barth approached the Association with plans to build what the parties refer to as a "pool house" on his property. Based on the Association's restrictive covenants, the Association's Architectural Committee informed Barth that detached buildings were not permitted. Barth then proposed construction of a breezeway connecting the pool house to Barth's home. The Committee approved the final plans in January 2014. The plans for the addition were then submitted to the City of Bismarck, which approved the plans and issued a building permit.

[¶ 3] The Ceynars bought the house next door to Barth's property from their daughter in June 2014. Actual construction of the pool house began in February 2015, and the Ceynars complained to the Association. They claimed the pool house would block their view to the north and west toward the Hawktree Golf Club. Members of the Association came to the Ceynars' home to observe how the pool house affected their property, but the Association took no action to stop construction.

[¶ 4] In July 2015, the Ceynars brought this action against Barth and the Association alleging breach of contract/covenant and nuisance. They claimed the pool house violated restrictive covenants and unreasonably interfered with the enjoyment of their property and diminished its value. After Barth remedied a setback violation, he and the Association moved for summary judgment dismissing the action. In October 2016, the district court denied the motion, concluding there were "a number of genuine issues of material fact" precluding summary judgment. The court also informed the parties that he would recuse himself from the case if any of the parties objected because he knew the Association's secretary. Barth moved for reconsideration, and Barth and the Association requested the judge recuse himself. A different judge was assigned to the case.

[¶ 5] In December 2016, Barth and the Association filed another summary judgment motion seeking dismissal of the action. The district court granted the motion, concluding the pool house did not violate any of the Association's restrictive covenants. The court also dismissed the nuisance claim because under N.D.C.C. § 42–01–01 "[a] nuisance consists in unlawfully doing an act or omitting to perform a duty," and the "Ceynars have provided nothing to the Court to suggest Barth's construction of the pool house was unlawful."

II

■ [¶ 6] The Ceynars argue the district court erred in granting the second motion for summary judgment because it was an impermissible collateral attack on the first judge's order denying summary judgment. The Ceynars argue the second motion for summary judgment should have been treated as a N.D.R.Civ.P. 60(b) motion because it asked the district court to reconsider the same question.

■ [¶ 7] Ceynar's reliance on N.D.R.Civ.P. 60(b) is misplaced. Rule 60(b) does not apply to interlocutory judgments and orders. *Thompson v. Goetz*, 455 N.W.2d 580, 585 (N.D. 1990). "Interlocutory orders of any kind are ordinarily subject to reconsideration and change without

the restrictions applicable to reconsideration and changes in 'final' judgments." *Cumber v. Cumber*, 326 N.W.2d 194, 195 (N.D. 1982). The denial of a motion for summary judgment is an interlocutory order leaving a case pending for trial and decides nothing, except that the parties may proceed with the case. *Herzog v. Yuill*, 399 N.W.2d 287, 293 (N.D. 1987). An interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." N.D.R.Civ.P. 54(b). "When a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal." *Strom–Sell v. Council for Concerned Citizens, Inc.*, 1999 ND 132, ¶ 12, 597 N.W.2d 414 (internal citation omitted).

[¶ 8] The district court's consideration of the second motion for summary judgment was not the result of an improper collateral attack.

### III

[¶ 9] The Ceynars argue the district court erred in granting summary judgment dismissing their breach of contract/covenant and nuisance claims.

[¶ 10] In *Hokanson v. Zeigler*, 2017 ND 197, 900 N.W.2d 48, we explained:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the

evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Id.* at ¶ 14 (quoting *Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 8, 816 N.W.2d 31).

### A

[¶ 11] The Ceynars argue the district court erred in granting summary judgment because there are genuine issues of material fact whether the Association's restrictive covenants prohibited Barth's construction of the pool house and whether the Association breached its duty to enforce those covenants.

[¶ 12] In *Hill v. Lindner*, 2009 ND 132, ¶ 8, 769 N.W.2d 427, we explained:

This Court has said a landowner may sell land subject to restrictive covenants, provided the covenants are not contrary to public policy. *Allen v. Minot Amusement Corp.*, 312 N.W.2d 698, 702 (N.D. 1981). Restrictive covenants are not favored, but "they will be given ... [full] effect when clearly established." *Id.* The interpretation of a restrictive covenant is generally governed by rules for interpretation of a contract. *See Jackson v. Canyon Place Homeowner's Ass'n, Inc.*, 2007 SD 37, ¶ 9, 731 N.W.2d 210; *Milltown Addition Homeowner's Ass'n v. Geery*, 2000 MT 341, ¶ 11 [303 Mont. 195], 15 P.3d 458; *Stevens v. Elk Run Homeowners'Ass'n, Inc.*, 2004 WY 63, ¶ 13, 90 P.3d 1162 (Wyo. 2004). *See gen-*

*erally* 3 Richard R. Powell, *Powell on Real Property*, ch. 24 (2008); 9 Richard R. Powell, *Powell on Real Property* § 60.05 (2008); 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* §§ 12–17, 168 (2005). Although restrictive covenants are strictly construed in favor of free use of land and against those who seek enforcement, the rule of strict construction will not be employed to defeat the obvious purpose of a restrictive covenant. *See* 20 Am. Jur. 2d, *supra* §§ 12–17, 168. A restrictive covenant must be construed as a whole to ascertain the parties' intent in light of the surrounding circumstances and words must be given their plain and ordinary meaning. 9 *Powell on Real Property*, at § 60.05. *See* N.D.C.C. §§ 9–07–02; 9–07–04; 9–07–06; 9–07–09; and 9–07–12.

*See also Wheeler v. Southport Seven Planned Unit Dev.*, 2012 ND 201, ¶ 8, 821 N.W.2d 746 (comparing restrictive covenants to zoning ordinances as tools to restrict the use of real property).

[¶ 13] The Ceynars argue Barth's pool house violated Article VIII, Section 4 of the Association's restrictive covenants, which provides:

*Section 4. Nuisances: Construction Activities.*

No rubbish or debris of any kind shall be placed or permitted to accumulate upon or adjacent to any Lot or other property, and no odors or loud noises shall be permitted to arise or emit therefrom, so as to render any such property or any portion thereof, or activity thereon, unsanitary, unsightly, offensive or detrimental to any other Lot in the vicinity thereof or to the occupants of such other Lot. No other nuisance shall be permitted to exist or operate upon any Lot or other property so as to be offensive or detrimental to any other Lot in the vicinity thereof or to its occupants. Normal construction activities and parking in connection with the building of improvements on a Lot or other property shall not be considered a nuisance or otherwise prohibited by this Declaration, but Lots and other property shall be kept in a neat and tidy condition during construction periods, trash and other debris shall not be permitted to accumulate, and supplies of brick, block, lumber and other building materials will be piled only in such areas as may be approved in writing by the Architectural Committee. In addition, any construction equipment and building materials stored or kept on any Lot or other property during the construction of improvements may be kept only in areas approved in writing by the Architectural Committee, which may also require screening of the storage areas. The Architectural Committee in its sole discretion shall have the right to determine the existence of any such nuisance. The provisions of this Section shall not apply to construction activities of the Declarant.

[¶ 14] We agree with the district court that this covenant relates to construction activities rather than the finished product. The covenant addresses "rubbish or debris" and "odors or loud noises" as a "nuisance," but exempts "[n]ormal construction activities." Even if the "[n]o other nuisance" language could be construed to encompass matters other than rubbish, debris, odors, or loud noises, the Committee is given the authority to decide in its "sole discretion" whether a nuisance exists for purposes of this covenant. The Association approved Barth's construction plans and found no nuisance exists. There is no genuine issue of material fact whether this covenant was violated.

[¶ 15] The Ceynars' primary argument regarding the restrictive covenants is that

they should be interpreted to prohibit the pool house because fences, trees, and outbuildings are prohibited and the pool house also "destroys the open prairie look and overall theme of the community in the subdivision." The Ceynars acknowledge that the restrictive covenants do not expressly prohibit fences, outbuildings, or trees, but they contend the Association has construed the covenants to prohibit them. The Ceynars rely on a text message sent by, and deposition testimony of, the Association's secretary indicating fences, outbuildings, and trees were not allowed in order to preserve an "open prairie look" in the subdivision. They also rely on the Association president's deposition testimony that the covenants require an "overall theme of the community."

[¶ 16] This Court has not addressed implied restrictive covenants, but they are not favored by the courts. *See, e.g., Hill v. Cmty. of Damien of Molokai*, 121 N.M. 353, 911 P.2d 861, 865–66 (N.M. 1996) ("we will not read restrictions on the use and enjoyment of the land into the covenant by implication"); *Stevens v. Elk Run Homeowners' Ass'n, Inc.*, 90 P.3d 1162, 1166 (Wyo. 2004) ("In general, restrictions upon the use of land are not favored and, accordingly, such restrictions will not be extended by implication."). Even if we were to recognize implied restrictive covenants, the Nebraska Supreme Court in *Skyline Woods Homeowners Ass'n, Inc. v. Broekemeier*, 276 Neb. 792, 758 N.W.2d 376, 387 (2008) (footnotes omitted), explained:

In order for implied restrictive covenants to exist, there must be a common grantor of land who has a common plan of development for the land. . . .

To enforce an implied restrictive covenant against a subsequent owner of land, the subsequent purchaser must have actual or constructive knowledge of the implied restrictive covenant. However, it

should be noted that because implied restrictive covenants mandate relaxation of the writing requirement, courts are generally reluctant and cautious to conclude implied restrictive covenants exist.

[¶ 17] The Ceynars point to no evidence that these vague statements have anything to do with the plans of the grantor of the land, and they do not allege that Barth had any type of knowledge of the "open prairie look" and the "overall theme of the community." Furthermore, the concept of implied restrictive covenants, particularly involving the ambiguous standards alleged by the Ceynars here, runs counter to our caselaw stating covenants will be given effect only " 'when clearly established.' " *Wheeler*, 2012 ND 201, ¶ 13, 821 N.W.2d 746 (quoting *Hill v. Lindner*, 2009 ND 132, ¶ 8, 769 N.W.2d 427). The district court did not err in refusing to imply restrictive covenants in this case.

[¶ 18] We conclude the district court did not err in granting summary judgment dismissing the Ceynars' claims based on the restrictive covenants. Consequently, it is not necessary to address the breach of any contractual obligation the Association allegedly owed to the Ceynars to enforce the covenants.

B

[¶ 19] The Ceynars argue the district court erred in granting summary judgment dismissing their statutory private nuisance claim against Barth.

[¶ 20] Section 42–01–01, N.D.C.C., defines a nuisance for purposes relevant to this case as follows:

A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

. . . .

4. In any way renders other persons insecure in life or in the use of property.

"A private nuisance is one which affects a single individual or a determinative number of persons in the enjoyment of some private right not common to the public." N.D.C.C. § 42–01–02. Whether a statutory nuisance exists is a mixed question of fact and law. *See, e.g., Kappenman v. Klipfel,* 2009 ND 89, ¶ 36, 765 N.W.2d 716; *City of Fargo v. Salsman,* 2009 ND 15, ¶ 9, 760 N.W.2d 123.

[¶ 21] In opposition to the motion for summary judgment, Virginia Ceynar submitted an affidavit stating in part:

4. Before Mr. Barth built his pool house, we enjoyed the open prairie look and feel. Not only have we also lost views of the Burnt Creek Valley and the golf course because of the pool house, the size and scope of the pool house and breezeway towers over our property, depriving us of anything that could be considered an open prairie look. There is no open prairie look. Instead, we have a giant pool house that is omnipresent whether we are having a quiet coffee and enjoying a sunrise or sunset from our breakfast nook, grilling and entertaining visitors on our porch, taking in a quiet evening overlooking the sloping hills and landscape surrounding The Ridge at Hawktree, or simply playing with our grandkids in our backyard. The pool house is visible from nearly every room in our home. Because of the loss of the open prairie look caused by the pool house, we no longer enjoy being in our backyard. That enjoyment has been taken away from us. Instead of the Burnt Creek Valley and golf course, the pool house is our new landscape, our new open prairie look. We feel violated by the pool house.

The Ceynars presented an appraisal of their property indicating the obstructed view caused by the pool house lowered its value by $140,000. They also presented photographs taken before and after construction of the pool house demonstrating their obstructed view.

[¶ 22] The district court dismissed the statutory nuisance claim, reasoning:

The only facts presented to the Court show that Barth obtained all necessary approvals and permits from The Ridge prior to construction of the pool house. There is nothing unlawful about the construction and presence of the pool house as required by N.D.C.C. § 42–01–01 to maintain a nuisance claim ("A nuisance consists in unlawfully doing an act or omitting to perform a duty . . ."). The Ceynars have provided nothing to the Court to suggest Barth's construction of the pool house was unlawful.

[¶ 23] The Ceynars argue the district court erred in granting summary judgment because it failed to engage in the balancing test set forth in *Rassier v. Houim,* 488 N.W.2d 635 (N.D. 1992). In *Rassier,* we said in assessing a statutory nuisance claim the court must determine "whether the defendant created a condition which unreasonably interfered with plaintiff's use of property." Id. at 638. The coming-to-the-nuisance doctrine is one of the factors considered in determining whether the nuisance exists. *Id.* We also said:

Other factors relevant to the reasonableness of a defendant's interference with the plaintiff's use of property include a balancing of the utility of defendant's conduct against the harm to the plaintiff, plaintiff's attempts to accommodate defendant's use before bringing the nuisance action, and plaintiff's lack of diligence in seeking relief. [5 Richard R. Powell & Patrick J. Rohan,] *Powell*

*on Real Property*, ¶¶ 704[2]–704[3] [ (1991) ], *see also* Restatement (Second) of Torts §§ 822, 826–30 (1977).

*Id. See also Jerry Harmon Motors, Inc., v. Farmers Union Grain Terminal Ass'n*, 337 N.W.2d 427, 431–32 (N.D. 1983) (recognizing the applicability of the coming to the nuisance doctrine to a nuisance claim under N.D.C.C. § 42–01–01). The Ceynars argue there are genuine issues of material fact regarding these various factors.

■ [¶ 24] We agree that the court improperly focused solely on the absence of evidence that construction of the pool house was "unlawful." We have rejected the proposition that "only a violation of a statute or regulation will constitute breach of a duty which gives rise to an action based upon nuisance." *Knoff v. Am. Crystal Sugar Co.*, 380 N.W.2d 313, 318 (N.D. 1986); *see also Kappenman*, 2009 ND 89, ¶ 38, 765 N.W.2d 716; *Rassier*, 488 N.W.2d at 638. Nevertheless, we will not set aside a district court's decision simply because the court applied an incorrect reason, if the result is the same under the correct law and reasoning. *See Myers v. State*, 2017 ND 66; ¶ 10, 891 N.W.2d 724; *Trosen v. Trosen*, 2014 ND 7, ¶ 28, 841 N.W.3d 687.

[¶ 25] The essence of the Ceynars' nuisance claim is that Barth's pool house obstructs their view of the "open prairie look" in the subdivision. This Court "has allowed landowners compensation for loss of the right of view from their property" in a condemnation action. *Filler v. City of Minot*, 281 N.W.2d 237, 244 (N.D. 1979); *see also City of Fargo v. Fahrlander*, 199 N.W.2d 30, 34 (N.D. 1972); *Kenner v. City of Minot*, 98 N.W.2d 901, 907 (N.D. 1959); *Cummings v. City of Minot*, 67 N.D. 214, 220–21, 271 N.W. 421, 423–24 (1937); N.D.C.C. § 24–01–32. However, we have not addressed whether landowners' views from their property are protected under nuisance principles.

■ [¶ 26] In J. Hand & J. Smith, *Neighboring Property Owners* § 5:6 (November 2017), the authors describe the general rule and discuss nuisance cases in California from which our nuisance statute was derived:

Scenic views may enhance the value of a tract of land. To see the ocean, the mountains, a forest, a lake, or a river from one's land may be an aesthetic delight. Such a benefit, while intangible may enhance market value, with buyers willing to pay extra for the view.

Just as traditional American property law fails to protect access to light over neighboring land, in the absence of an express easement or covenant, advantageous views are unprotected. Most of the conflicts involve the construction of buildings that obstruct sight lines. *Venuto v. Owens–Corning Fiberglas*[ ] *Corp.*[, 22 Cal.App.3d 116, 99 Cal.Rptr. 350 (1971),] is an interesting California case in which air pollution obstructed the view from the plaintiff's land. There, the court refused to find that smoke from the defendant's factory constituted a nuisance, since the only interest of the plaintiff that was injured by the pollutants was his view. "He has not alleged any perceptible injury to his property nor has he alleged that these emissions pollute the air so as to sensibly impair the enjoyment of his property." Decisions of the California courts of appeal demonstrate the continuing strength of the common law rule that a landowner has no right to an unobstructed view over adjoining property. *Noronha v. Stewart*, 199 Cal.App.3d 485, 245 Cal. Rptr. 94 (1988) (gazebo, trellises, and foliage blocked homeowners' view of harbor area and were apparently intended to have that effect); *Wolford v. Thom-*

*as,* 190 Cal.App.3d 347, 235 Cal.Rptr.422 (1987) (penthouse addition to apartment building blocked neighbors' view of San Francisco skyline and bay, reducing market value of neighbors' property by over $50,000). Because a landowner has no right to an unobstructed view, the size and shape of a neighboring structure cannot be a nuisance, even if it effects material reduction in market value. *Oliver v. AT&T Wireless Services,* 76 Cal.App.4th 521, 90 Cal.Rptr.2d 491, 88 A.L.R.5th 819 (3d Dist. 1999) (130–foot cellular telephone transmission tower, "looming" over plaintiffs' property).

Courts in other jurisdictions also continue to follow the traditional doctrine. *See Saurer v. Board of Zoning Appeals,* 629 N.E.2d 893 (Ind. Ct.App. 1994) (landowner is permitted to store rusted tractors and other unattractive items outside; such items are not junk for purposes of zoning ordinance because landowner has no duty to avoid interference with neighbor's scenic view); *Bubis v. Kassin,* 323 NJ Super 601, 733 A.2d 1232 (App.Div. 1999) (newly built sand berm that blocks neighbor's view of ocean is not nuisance); *Cash v. Cincinnati Bd of Zoning Appeals,* 117 Ohio.App.3d 319, 690 N.E.2d 593 (1996) (upholding grant of variance to build residence on hill that would block neighbor's view of river); *Collinson v. John L. Scott, Inc.,* 55 Wash.App 481, 778 P.2d 534 (1989) (no nuisance as matter of law when hillside construction of condominiums blocked view of up-slope neighbor).

(Footnotes omitted.) *See also Fontainebleau Hotel Corp. v. Forty–Five Twenty-Five, Inc.,* 114 So.2d 357, 359 (Fla. Ct. App. 1959) ("it is universally held that where a structure serves a useful and beneficial purpose, it does not give rise to a cause of action ... even though it causes injury to another by cutting off the light and air and interfering with the view that would otherwise be available over adjoining land in its natural state"); *Mohr v. Midas Realty Corp.,* 431 N.W.2d 380, 383 (Iowa 1988) ("we find no compelling reason to recognize an enforceable right of view over private property"); *44 Plaza, Inc. v. Gray–Pac Land Co.,* 845 S.W.2d 576, 578 (Mo. Ct. App. 1992) ("absent a statute or contract to the contrary, the obstruction of a landowner's view is not actionable"); *Kruger v. Shramek,* 5 Neb.App. 802, 565 N.W.2d 742, 747 (1997) ("a lawful building or structure cannot be complained of as a private nuisance merely because it obstructs the view of neighboring property"); 4 R. Powell & M. Wolf, *Powell on Real Property* § 34.11[5] (2000) ("In all jurisdictions, easements of light, air, and view may be created by express grant."); 1 Am. Jur.2d *Adjoining Landowners* § 100 (2016) ("A useful building or other structure ... is not to be deemed a nuisance merely for the reason that it may injure adjoining property by cutting off the view from it.") (footnote omitted); 2 C.J.S. *Adjoining Landowners* § 26 (2013) ("a landowner has no natural right to an unobstructed view regardless of the extent to which this may contribute to the enjoyment of the estate") (footnote omitted).

[¶ 27] The practical necessity for the general rule was cogently explained in *Mohr,* 431 N.W.2d at 382–83:

[E]xtending the law of nuisance to encompass obstruction of view caused by lawful construction of a neighboring building would unduly restrict a landowner's right to the free use of property, interfere with established zoning ordinances, and result in a flood of litigation. Because every new construction project is bound to block someone's view of something, every landowner would be open to a claim of nuisance. If the first property owner on the block were given an enforceable right to unobstructed

view over adjoining property, that person would fix the setback line for future neighbors, no matter what zoning ordinances provide. The practical implication of such a right would be the need of every "servient" owner to obtain a waiver of the easement of view created in the "dominant" landowner. Such obstacles to land ownership and development, for the sake of a clear view, hardly commend themselves.

[¶ 28] We adopt the general rule. We have concluded that the district court did not err in ruling the Association's restrictive covenants were not violated by Barth's construction of the pool house. The Association approved Barth's construction plans, and Barth received a building permit from the relevant local governmental authorities. The Ceynars point to nothing in the record establishing a contractual easement for an unobstructed view from their property. Because the Ceynars have no cognizable right to an unobstructed view from their property, Barth's construction of the pool house as a matter of law did not unreasonably interfere with the Ceynars' use and enjoyment of their property. Therefore, the district court was not required to engage in balancing the *Rassier* factors.

[¶ 29] We conclude the district court did not err in granting summary judgment dismissing the Ceynars' statutory nuisance claim.

## IV

[¶ 30] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. The summary judgment is affirmed.

[¶ 31] Lisa Fair McEvers

Daniel J. Crothers

Jerod E. Tufte

Jon J. Jensen

Gerald W. VandeWalle, C.J.